_____

No. 95-2410
_____

United States of America,          *
                                    *
          Appellee,                 *
                                    *
     v.                             *
                                    *
Marlin Lynn Reeves,                 *
                                    *
          Appellant.                *

_____
                                         Appeals from the United States
No. 95-2411                              District Court for the
_____                                Eastern District of Arkansas.

United States of America,          *
                                    *
          Appellee,                 *
                                    *
     v.                             *
                                    *
Danny Ray Reeves,                   *
                                    *
          Appellant.                *
                                         _____

          Submitted:  January 9, 1996

             Filed:  May 3, 1996
                                         _____

Before WOLLMAN, CAMPBELL,* and MURPHY, Circuit Judges.
                                         _____

WOLLMAN, Circuit Judge.

     These consolidated appeals follow the convictions of Marlin Lynn
Reeves ("Lynn") and Danny Ray Reeves ("Danny Ray") for their role in a
scheme involving stolen vehicles whereby the stolen nature of the vehicles
was concealed by replacing the true vehicle

_____

     *The HONORABLE LEVIN H. CAMPBELL, United States Circuit
Judge for the First Circuit, sitting by designation.

identification numbers (VINs) with numbers from salvage vehicles of the same make, model, and body style as the stolen vehicles. A jury convicted Lynn of concealing a stolen vehicle in violation of 18 U.S.C. § 2313(a) and of conspiring to sell stolen motor vehicles in violation of 18 U.S.C. § 371. Danny Ray was convicted of the same conspiracy charge, as well as of forty counts of altering or removing VINs in violation of 18 U.S.C. § 511, and of twenty-eight counts of selling or receiving stolen vehicles in violation of 18 U.S.C. § 2313(a).

Lynn asks us to review the sufficiency of the evidence presented against him and to correct an alleged error in his sentence. Danny Ray claims that the district court[1] erred in three respects: (1) in not granting a mistrial when a government witness invoked his Fifth Amendment privilege against self-incrimination in the presence of the jury; (2) in not permitting him to participate in juror misconduct proceedings that took place after his appeal was filed; and (3) in double counting under the Sentencing Guidelines.

## I. Background

Danny Ray owned an auto body shop in Forrest City, Arkansas, and Lynn, Danny Ray's brother, was an occasional employee of the body shop. The case began when Missouri police recovered a stolen vehicle that had been re-tagged with a VIN from a salvage vehicle. Investigators traced the salvage vehicle to Danny Ray's shop. After obtaining a list of other salvage vehicles purchased by Danny Ray, investigators discovered that many of the VINs from these vehicles had been re-tagged onto stolen vehicles and the cars then sold to new owners. Seven individuals, including Lynn and Danny Ray, were indicted in connection with this scheme. Three of these

---

[1]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

defendants pleaded guilty, testified at trial, and received reduced sentences.

## II.  Marlin Lynn Reeves

### A.  Insufficient Evidence

Lynn first argues that the evidence presented at trial was insufficient to convict him.  In considering this claim, we must review the evidence in the light most favorable to the government, reversing only if we conclude that no reasonable jury could have found Lynn guilty beyond a reasonable doubt.  United States v. Quintanilla, 25 F.3d 694, 699 (8th Cir.), cert. denied, 115 S. Ct. 457 (1994).

Lynn first challenges the sufficiency of the evidence of conspiracy. To prove the existence of a conspiracy, the government must offer either direct or circumstantial evidence to show that at least two people entered an agreement, the object of which was a violation of the law.  United States v. Escobar, 50 F.3d 1414, 1419 (8th Cir. 1995).  Through the testimony of three admitted co-conspirators, the government established the existence of an agreement between at least five individuals to engage in illegal activity.  Moreover, the government presented overwhelming evidence detailing the intricacies of the conspiracy.  Government investigators traced the salvage vehicles from various salvage yards to Danny Ray's shop; they traced the matched stolen vehicles from their original owners to Danny Ray; and, finally, they traced the re-tagged stolen vehicles to their new owners.  Once the government established the existence of the conspiracy, only slight evidence linking Lynn to that conspiracy was required to support his conviction.  United States v. Jenkins, No. 95-2787, slip op. at 4 (8th Cir. Mar. 6, 1996) (citing United States v. Smith, 49 F.3d 362, 365 (8th Cir. 1995)).

The government offered substantial evidence linking Lynn to the conspiracy, calling as witnesses three admitted co-conspirators who each testified that Lynn played an active role in the conspiracy. Shane Roberts testified to a conversation in which he discussed with Danny Ray and Lynn the possibility of stealing vehicles for them. When asked how he had learned to steal vehicles, Roberts answered that Lynn explained how to do it and that co-conspirator Earvin Parchmon demonstrated the process. Roberts further testified that Lynn was one of four people who had access to the building located at Danny Ray's shop, where the stolen vehicles were stored. In addition, Roberts stated that because he had a cast on his leg, either Lynn or Danny Ray had always been present to provide any needed assistance while he stole vehicles.

Another co-conspirator, David Paul Davis, testified that stolen vehicles arrived in Danny Ray's shop with a broken side window and a "busted" steering column. He further testified that Lynn helped him to fix the glass on these broken windows. Bryan Boggan, a third co-conspirator, corroborated this testimony, stating that he had witnessed Lynn repairing windows and steering columns and re-tagging stolen vehicles.

Lynn questions the reliability of these witnesses in light of the reduced sentences granted them in exchange for their testimony. As we find the testimony of these three witnesses to be neither facially incredible nor insubstantial, we will not delve further into questions of credibility. See United States v. Drews, 877 F.2d 10, 13 (8th Cir. 1989) ("Accomplice testimony is sufficient to sustain a conviction when it is not incredible or insubstantial on its face."). See also United States v. Lopez, 42 F.3d 463, 466 (8th Cir. 1994) (It is the role of the jury, which is aware of the possible motivations behind accomplice testimony, to weigh issues of credibility).

Lynn next claims that the government failed to establish the requisite elements of the count charging that he concealed or stored a stolen vehicle that had crossed state lines, having knowledge that the vehicle was stolen. The government offered a stipulation by the stolen truck's owner to prove that it had been stolen and transported across the state line. To establish Lynn's role in storing the vehicle, the government offered testimony that the truck was discovered in a farm field approximately three-tenths of a mile from Lynn's home. Both Lynn's home and the property where the truck was found were owned by Lynn's grandfather. The evidence connecting Lynn to the vehicle is not overwhelming; however, given the evidence of Lynn's extensive involvement in the conspiracy and the conspicuous nature of the new truck found in a thicket among junked vehicles, the jury could have reasonably inferred that Lynn was responsible for concealing the vehicle. Finally, the co-conspirator testimony concerning Lynn's knowledge of the conspiracy provides sufficient circumstantial evidence from which the jury could infer that Lynn knew the vehicle was stolen. Allowing the government the benefit of all reasonable inferences that may be logically drawn from the evidence, see United States v. DeLuna, 763 F.2d 897, 924 (8th Cir.), cert. denied, 474 U.S. 980 (1985), the government provided sufficient evidence to allow this claim to go to the jury. We thus find sufficient evidence to support Lynn's conviction on both counts.

**B. Sentencing Guidelines**

Finally, Lynn claims that in calculating his sentence the district court misapplied the Sentencing Guidelines. Pursuant to U.S.S.G. § 1B1.3 (a)(1)(A) and (B), Lynn was held accountable for all acts committed or facilitated by him and for all reasonably foreseeable acts committed by his co-conspirators. See United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993) (en banc). In calcualating the loss attributable to each defendant, the district court used the time period during which that defendant was

involved in the conspiracy. Vehicles stolen during that period were considered reasonably foreseeable to that defendant. Lynn was found to have participated in the conspiracy from June 18, 1991, until May 4, 1993. Thirty-three vehicles were stolen during this period, having a total value of $316,000. U.S.S.G. §§ 2B6.1 and 2F1.1 directed an enhancement of eight levels for this aggregate loss.

Lynn argues that the evidence did not support this enhancement. He claims that his role in the conspiracy, if any, was minor. Lynn's mother-in-law, Esther Sampley, testified at the sentencing hearing that Lynn suffered a serious accident on April 5, 1991, and was incapacitated and heavily medicated for some time after that. She further testified that because she suspected Lynn of cheating on her daughter (his wife), she followed him periodically after the accident until November 1993, when his wife left him. During that period, she could recall only one time that Lynn went to Danny Ray's shop. Lynn argues that such sparse involvement precludes his being held accountable for thirty-three vehicles.

We review for clear error the district court's factual findings with respect to the time span of Lynn's involvement in the conspiracy and the resulting amount of loss attributable to him. See United States v. Phillippi, 911 F.2d 149, 151 (8th Cir. 1990), cert. denied, 498 U.S. 1036 (1991). The district court noted that even assuming that Lynn was not involved in the conspiracy during the six months following his accident, the amount chargeable to him would still exceed $200,000, with the result that his sentence would remain the same. Direct trial testimony linking Lynn to the conspiracy during the entire year of 1992 precluded any further reduction. We find no error in this careful evaluation.

Lynn's final argument that his sentence is disproportionate to his co-defendants, considering his comparably minor role in the

-6-

offense, is precluded by <u>United States v. Granados</u>, 962 F.2d 767, 774 (8th Cir. 1992) ("A defendant cannot rely upon his co-defendant's sentence as a yardstick for his own."). <u>See</u> <u>also</u>    <u>United States v. Jackson</u>, 959 F.2d 81 (8th Cir.) (affirming defendant's sentence which was twice as long as that received by conspiracy ringleader who entered plea agreement and cooperated with government), <u>cert.</u> <u>denied</u>, 506 U.S. 852 (1992).

## III.  Danny Ray Reeves

### A.  Prosecution witness' invocation of the Fifth Amendment

Upon being asked whether he had ever bought any vehicles from Danny Ray, prosecution witness Tommy Hoskins responded, "On advice of my attorney and under the Fifth Amendment, I'll have to refuse to answer any questions."  The district court denied Danny Ray's immediate motion for a mistrial.

We review for abuse of discretion a district court's refusal to grant a mistrial.  <u>See</u> <u>United States v. Quinn</u>, 543 F.2d 640, 650 (8th Cir. 1976). We have held that a mistrial may be warranted when a prosecutor calls a witness to the stand with advance knowledge that the witness will invoke the Fifth Amendment.  <u>Id</u>. at 650.  In such a case, we must consider the prosecutor's motive and the likelihood of the jury's drawing unwarranted inferences against the defendant.  In the present case there is no evidence that the prosecutor knew that Hoskins would invoke the Fifth Amendment. The prosecutor's apparent motive in calling Hoskins was to prove that Danny Ray had sold Hoskins a stolen vehicle with a salvage title.  In any event, Danny Ray suffered no prejudice regarding his involvement with Hoskins, as he was acquitted on the one count involving Hoskins.  Moreover, given the abundance of testimony at trial against Danny Ray, it seems unlikely that the jury would have in any way been unduly affected by Hoskins' invocation of the Fifth Amendment.  Thus, we find no error in the district court's refusal

to grant a mistrial.

### B.  Juror Misconduct

Several days after the trial, counsel for co-defendant James Caldwell, who was tried with Lynn and Danny Ray, spoke with a defense witness who claimed to have witnessed certain juror misconduct.  Later, at Caldwell's sentencing, his attorney heard of two other incidents of alleged juror misconduct, whereupon he moved for a new trial on Caldwell's behalf. The district court denied Danny Ray's request to join in Caldwell's motion, finding that it lacked jurisdiction to do so because Danny Ray's notice of appeal had already been filed.

The district court could properly have exercised jurisdiction over Danny Ray's request to join in the motion for a new trial.  Although district courts are prohibited from granting a motion for a new trial while an appeal is pending, see Fed. R. Crim. P. 33, they are not prohibited from denying such a motion or from certifying an intention to grant the motion to this court, which can then entertain a motion to remand the case. United States v. Cronic, 466 U.S. 648, 666 n.42 (1984).  See also 3 C. Wright, Federal Practice and Procedure § 557 pp. 338-340 (2d ed. 1982). Because the district court declined to exercise jurisdiction, however, and thus has not had the opportunity to review the motion for a new trial, we will not consider the merits of this claim.  See United States v. Boberg, 565 F.2d 1059, 1062 (8th Cir. 1977).

### C.  Application of Sentencing Guidelines

Finally, Danny Ray argues that the district court erred in its application of the Sentencing Guidelines.  In addition to a nine-level increase based upon the value of the vehicles stolen, Danny Ray's base level was increased another two levels pursuant to section 2B6.1(b)(2) upon a finding that he was in the business of

receiving and selling stolen property.  An increase of four more levels resulted from the finding that he was a leader and organizer of this criminal activity.  See U.S.S.G. § 3B1.1(a).  The Pre-Sentence Investigation Report noted that the factors considered in granting the section 3B1.1 increase included Danny Ray's leadership and organization of the enterprise.  Danny Ray argues that both the section 2B6.1(b)(2) and the section 3B1.1(a) increases were premised on the same conduct -- his ownership of Reeves Body Shop.  Although we agree that Danny Ray's position as owner of Reeves Body Shop -- the conduct relevant under section 2B6.1(b)(2) -- also facilitated his leadership role in the conspiracy, it did not require such a role.  Danny Ray could have run an illegal re-tagging operation in which stolen vehicles were received and sold without directing his employees to steal the vehicles that he would later sell.  Thus, section 3B1.1(a) does not double count; rather it merely holds Danny Ray accountable for conduct beyond that considered under section 2B6.1(b)(2).

## IV.  Conclusion

In No. 95-2410, we affirm Marlin Lynn Reeves' conviction and sentence.

In No. 95-2411, we affirm Danny Ray's conviction and sentence.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.