United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 30, 2003**

Charles R. Fulbruge III
Clerk

Revised January 16, 2004

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-60453

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STARSKY DARNELL REDD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

Before GARWOOD, JONES, and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

Starsky Darnell Redd appeals his jury trial conviction for attempting to possess cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a) and 846.  Redd was sentenced to 293 months' imprisonment, five years of supervised release, a $2,500 fine, and a $100 special assessment. We affirm the conviction and sentence.  We also note that Redd's post appeal

motion for a new trial based on newly discovered evidence remains pending before the district court.

## Facts and Proceedings Below

Beginning in October 2000, a narcotics task force began following Redd's blue Ford Expedition around Jackson, Mississippi. On November 1, the task force agents were informed that they should resume their surveillance of Redd at approximately 10:30 P.M. and were directed to a truck stop in nearby Clinton, Mississippi. Shortly after arriving at the truck stop, the agents noticed a tractor trailer arrive that matched the description they had been given. The agents approached the truck and received the consent of the driver, Hector Guajardo, to perform a search, during which they found significant amounts of drugs: a box containing ten kilograms of cocaine[1] in the cab of the truck and a large amount of marihuana in the trailer. The agents removed the box of cocaine from the truck but left the marihuana aboard.

Guajardo agreed to cooperate with the agents in a controlled delivery of the drugs. While waiting in the cab of the tractor trailer along with two Mississippi Bureau of Narcotics (MBN) agents—Marshall Pack and Jon Cooley—Guajardo received a call from Chris Jefferson, who had told Guajardo to meet him at the truck

---

[1] Guajardo initially told the agents that he thought this box contained marihuana. He stated that he agreed to cooperate with the agents "[b]ecause when the officer opened the box that was supposed to carry marihuana, it was cocaine." A field test and a later lab test identified the substance as cocaine. Chris Jefferson in his testimony spoke of money which was not ready when he was to meet the tractor trailer and stated that that money "was for 10 kilos of cocaine."

2

stop and to whom Guajardo was to deliver the box containing the cocaine. Between the time when the agents discovered the drugs on Guajardo's truck and the time of this call, one agent had observed Redd's blue Expedition briefly pull into the truck stop, but then immediately depart in the direction of Jackson. Both Redd and Jefferson were in the Expedition at that time.

In his call to Guajardo, Jefferson instructed Guajardo to meet him along the freeway—where Jefferson would be waiting on the shoulder of the road in a vehicle with its lights flashing. Upon seeing the vehicle, Guajardo was to flash his lights at the vehicle to signal his readiness to follow. Upon approaching the vehicle with its lights flashing, Agent Cooley, who was aboard Guajardo's truck, observed that it was the same blue Expedition they had been following earlier that day. Both Redd and Jefferson were in the Expedition at that time, and Redd was in the driver's seat. Redd led the tractor trailer off of the freeway and eventually to a parking lot adjacent to a building where Redd had his office.

Once in the parking lot, Jefferson exited the passenger side of the Expedition and walked to the rear. Redd then exited the driver's side and, according to the agents, placed what appeared to be a pistol in his waistband. Jefferson came to the passenger's side of the tractor trailer and opened the door. According to

3

Agent Pack, who claims to have been wearing his raid jacket,[2] Pack pointed his gun at Jefferson and told him: "Police. Get your hands up." Jefferson complied, and Pack commanded: "Police. Get down on the ground." As Pack was exiting the tractor trailer, Jefferson attempted to close the door on him. Pack said: "Police. Get down on the ground."[3] Jefferson then ran behind the Expedition and out of Pack's sight.

Pack claims that as he exited the cab of the tractor trailer, he saw Redd come up from behind the passenger side of the Expedition and fire a shot at him.[4] Pack returned fire. Meanwhile, Agent Cooley exited the cab of the tractor trailer yelling "Police. Police. Police." Cooley also returned fire. Redd eventually fled. When other officers later arrived, Redd was found wounded in a nearby field and was placed under arrest. The officers also recovered a pistol near where they had found Redd. The pistol bore Redd's fingerprint and matched cartridge casings and spent projectiles found in the parking lot and in Redd's Expedition.

---

[2] The raid jacket is black with "MBN" and "State Police" in large, yellow lettering. Although Pack and Cooley claim that Pack was wearing his raid jacket when he confronted Jefferson, Guajardo, who at the time was in the cab of the tractor trailer, claims that after the shooting started, Pack came back to the tractor trailer to obtain his raid jacket.

[3] Jefferson claims that Pack did not identify himself as a police officer and it was not otherwise obvious that he was a police officer. Redd also claims that he did not know that Pack and Cooley were police—there was no police jacket or any other indication that they were police.

[4] Redd claims that he was shot at first.

4

Redd was charged in a three-count superseding indictment with: count one, conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; count two, attempting, aided and abetted by others, to possess with intent to distribute approximately ten kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2; and count three, knowingly possessing and discharging a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(iii). On January 31, 2002, a jury found Redd guilty of count two and not guilty of counts one and three. Following the trial, Redd on February 8, 2002, moved for a new trial or, in the alternative, for judgment notwithstanding the verdict; the district court on April 22, 2002, denied the motion. On May 14, 2002, Redd was sentenced. Redd filed his notice of appeal on May 17, 2002, and on July 8, 2002, he filed a motion in the district court for new trial based on newly discovered evidence.[5] The district court on September 24, 2002, denied the July 8 motion claiming lack of jurisdiction due to Redd's pending appeal. Redd has not filed a notice of appeal after filing his July 8, 2002 motion.

## Discussion

Redd raises several claims of error, as follows: (1) the evidence was insufficient to convict him; (2) the jury instructions were improper; (3) the district court exerted undue pressure on the

---

[5] On July 29, 2002, this court dismissed Redd's appeal for want of prosecution; on September 16, 2002, this court reinstated Redd's appeal.

5

jury to reach a verdict; (4) the district court improperly denied his request to issue a writ of habeas corpus *ad testificandum* for a potential witness confined in a federal prison; (5) the district court improperly allowed evidence of the task force's surveillance of him; and (6) the district court improperly denied as moot his July 8, 2002 motion for new trial based on newly discovered evidence. We address each point of error in turn and conclude that none warrants reversal.

## I. Sufficiency of the Evidence

### A. Standard of Review

Our standard of review for a challenge to the sufficiency of the evidence in a criminal conviction is "highly deferential to the verdict." *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002). Our review is "limited to whether the jury's verdict was reasonable, not whether we believe it to be correct." *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001). We ask "'whether the evidence, when reviewed in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction, allows a rational fact finder to find every element of the offense beyond a reasonable doubt.'" *Harris*, 293 F.3d at 869 (quoting *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)).

### B. Evidence Before the Jury

In order to convict Redd of the attempt charge under 21 U.S.C. § 846, the jury was required to find that Redd was "acting with the kind of culpability otherwise required for the commission" of a possession with intent to distribute cocaine charge and "must have engaged in conduct which constitutes a substantial step toward commission of the crime i.e., conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Stone*, 960 F.2d 426, 433 (5th Cir. 1992) (internal quotations and citations omitted). Therefore, there must have been sufficient evidence for the jury to find that Redd knowingly took a substantial step toward possessing cocaine with the intent to distribute it. *See United States v. Gonzales*, 121 F.3d 928, 936 (5th Cir. 1997) (describing the elements for a possession with intent to distribute charge). "The elements of possession with intent to distribute may be established by circumstantial evidence." *Id.* "Furthermore, intent to distribute may be inferred from a large quantity of illegal narcotics and the value and quality of the drugs." *Id.*

Having reviewed the record, we hold that the evidence before the jury was sufficient to support the verdict. There was evidence that: Redd went with Jefferson—an acknowledged participant in the drug operation—to the truck stop where the tractor trailer, upon which the agents had just discovered cocaine, was to meet Jefferson; the box the agents pulled from the truck contained

7

cocaine weighing ten kilograms and conservatively valued at $200,000; Redd met the tractor trailer that had been carrying the cocaine and led it to his place of business; and he fired first upon an agent who had verbally identified himself as a police officer and who was wearing identifiable police clothing.[6] Drawing all inferences from this evidence in the light most favorable to the verdict, a reasonable jury could find that the government had proven beyond a reasonable doubt that Redd knowingly intended to possess cocaine with the intent to distribute and that he took a substantial step toward that end. There was also testimony from two former cell mates of Redd that during Redd's pre-trial confinement he stated he had been arrested while on his way with another to pick up some "cocaine" or "dope." Redd is not entitled to a judgment of acquittal.

## II.  Jury Instructions for Attempted Possession

Redd argues that the district court erred in its jury instructions by refusing to give his proposed instruction, resulting in a misstatement of law concerning the requirements for attempt and the defense of impossibility. Redd specifically argues that the district court should have included language quoted

---

[6] Redd, of course, points to testimony that indicates that the officers did not identify themselves—verbally or by identifiable clothing—and that he did not shoot first. Our review, however, does not involve weighing the conflicting testimony but is limited to whether a reasonable jury could have resolved the conflicts as it apparently did:  "This narrow standard of review . . . 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.'"  *United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998) (quoting *Jackson v. Virginia*, 99 S.Ct 2781, 2789 (1979)).

"straight from" *United States v. Oviedo*, 525 F.2d 881, 885 (5th Cir. 1976).  In addition, Redd argues that the district court improperly commented on the evidence.

### A.   Standard of Review

"When a challenge to jury instructions is properly preserved for appeal, we review the challenged instructions for abuse of discretion." *United States v. Daniels*, 281 F.3d 168, 183 (5th Cir. 2002).  When faced with a defendant's claim that the jury instruction was erroneous, we determine "'whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them.'" *Id.* (quoting *United States v. Dien Duc Huynh*, 246 F.3d 734, 738 (5th Cir. 2001)).  If, however, a challenge is not properly preserved for appeal, it is reviewed for plain error only.  *Daniels*, 281 F.3d at 183.  Under the plain error standard, the "appellant must show clear or obvious error that affects his substantial rights; if he does, this court has discretion to correct a forfeited error that seriously affects the fairness, integrity, or public reputation of judicial proceedings, but we are not required to do so." *United States v. Gordon*, 346 F.3d 135, 137 (5th Cir. 2003).

### B.   Refusal to Include Redd's Proposed Instruction

In order to properly object to the district court's jury instruction, Redd must have "inform[ed] the court of the

9

*specific* objection and the *grounds* for the objection." FED. R. CRIM. P. 30(d) (emphasis added). As "on a point such as instructions to juries there should be no difference in procedure between civil and criminal cases," our cases dealing with the parallel rule under the Federal Rules of Civil Procedure, Rule 51, may guide our analysis. FED. R. CRIM. P. 30 Advisory Committee Notes, 1944 Adoption ("This rule corresponds to rule 51 of the Federal Rules of Civil Procedure . . . .").

"We have repeatedly held that a general objection to the district court's jury instructions is insufficient to satisfy Rule 51." *Russell v. Plano Bank & Trust*, 130 F.3d 715, 719 (5th Cir. 1997). In this case, although Redd did object to the jury instruction, with respect to the language from *Oviedo* that Redd now argues should have been included in the instruction, Redd did not meet the specific objection requirements of Rule 30. Regarding this portion of the instruction, Redd's counsel at trial argued:

> "Our position is that that is against the law in the Fifth Circuit. The law in the Fifth Circuit in regard to impossibility is the one that we identified to your Honor in chambers; and that should have been the language that was included in the instruction, only that language. And that would be—and the case that we cited for your Honor was both *U.S. v. Oviedo* and *U.S. v. Bristol*."

Thus, while the objection was made, it could meet the specificity requirement only by incorporating the referred-to discussion in chambers. The jury instruction conference held in chambers, however, was off-the-record, and "'[o]bviously, we cannot consider

10

off-the-record objections to jury instructions not subsequently made part of the record.'" *Russell*, 130 F.3d at 720 n.2 (quoting *King v. Ford Motor Co.*, 597 F.2d 436, 440 n.3 (5th Cir. 1979)). Stripped of the benefit of the off-the-record objection, Redd's objection is merely that the district court's instruction is "against the law in the Fifth Circuit" because it conflicts with *Oviedo* in some way.[7] Such an objection does not meet the requirements of Rule 30. *See Williams v. Hoyt*, 556 F.2d 1336, 1340 (5th Cir. 1977) ("The sweeping generalization that the court's charge to the jury was 'fundamentally wrong' and 'not a fair statement of the law' does not require extended discussion. Appellants failed to object to the court's instructions."). Our review of Redd's challenge to the district court's omission of his proposed instruction is, therefore, limited to plain error review. *United States v. Manges*, 110 F.3d 1162, 1177 (5th Cir. 1997). Furthermore, because the proposed instruction is not in the record, we cannot analyze whether the district court improperly refused the instruction,[8] but must limit our analysis to whether the district

---

[7] Even though Redd did not meet the specific objection requirements with respect to this portion of the instruction, his counsel did specifically object to the rejection of several proffered instructions. Redd clarifies, however, that he is not contending on appeal that these specifically objected-to instructions should have been used, but that the language from *Oviedo* should have been used. Our focus, therefore, is not on the rejected instructions in the record, but on the rejected instruction that included the language from *Oviedo*, which is not in the record.

[8] If the instruction were in the record, we would evaluate Redd's claim that the district court improperly refused his proposed instruction by considering "whether the proffered instructions (1) represented a substantially correct statement of the law; (2) whether they were substantially given in the

11

court's charge, as a whole, is a correct statement of the law clearly instructing the jurors. *Daniels*, 281 F.3d at 183.

Redd fails to show that the district court's instructions constituted plain error. Taken as a whole, the district court's instructions to the jury were a correct statement of the law concerning attempt and the impossibility defense[9] and clearly and

_____

charge as a whole; and (3) concerned an important aspect of the trial so that their omission seriously impaired the defendant's ability to present a defense." *United States v. Peterson*, 101 F.3d 375, 381 (5th Cir. 1996). "A defendant is only entitled to a charge if it is supported by the law and by some evidence in the record." *Id.* Obviously, we cannot enter into such an analysis when the only record reference to the proposed instruction is "*U.S. v. Oviedo* and *U.S. v. Bristol*."

The wisdom of not entering into such an analysis is particularly clear in this case. In Redd's brief, he states that "the defense proposed the language quoted straight from *Oviedo*." Notwithstanding the claim that the instruction was a "straight quote," the language in the brief is in part a paraphrase of *Oviedo*, and our research has not found the "quote" in any other federal or state case. *Compare* Appellant's Brief("'The act, without any consideration to what the defendant knew or intended, must have marked the defendant's conduct as criminal in nature.") *with Oviedo*, 525 F.2d at 885 ("Thus, we demand that in order for a defendant to be guilty of a criminal attempt, the objective acts performed, without any reliance on the accompanying *mens rea*, mark the defendant's conduct as criminal in nature."). Moreover, while Redd's counsel referred to *U.S. v. Bristol* in making the objection, Redd's brief does not mention *Bristol* at all. We cannot analyze the alleged proposed instruction without knowing what language it may have actually contained.

[9] The challenged portion of the instructions stated:

"To be guilty of an attempt, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime with which he is charged with attempting and must have engaged in conduct which constitutes a substantial step toward the commission of the crime. A substantial step is one which strongly corroborates the firmness of the defendant's intent. The acts considered alone must mark the defendant's conduct as criminal in nature."

"The fact that the object of the attempt was impossible to accomplish because the officers had removed the box containing the cocaine from the tractor-trailer rig is not a defense to this charge."

This is very much in line with Fifth Circuit case law:

"[T]his circuit has properly eschewed the semantical thicket of the impossibility defense in criminal attempt cases and has instead required proof of two elements: first, that the defendant acted with the kind of culpability otherwise required for the commission of the underlying substantive offense, and, second, that

12

adequately instructed the jurors as to the applicable principles of law. Even apart from the plain error doctrine, we see no reversible error in this aspect of the instructions.

### C. *Comments Regarding the Evidence*

Redd also argues that the district court improperly commented on the evidence by stating that "[t]he fact that the object of the attempt was impossible to accomplish because the officers had removed the box *containing the cocaine* from the tractor-trailer rig is not a defense to this charge," thereby improperly removing an issue of fact from the jury. Because Redd did not raise it at trial, we review this challenge for plain error.[10]

In a criminal case, "no fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truths." *United States v. Johnson*, 718

---

the defendant had engaged in conduct which constitutes a substantial step toward commission of the crime. The substantial step must be conduct which strongly corroborates the firmness of defendant's criminal attempt." *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001).
Likewise, the district court's attempt instructions were essentially the same as Fifth Circuit Pattern Jury Instructions, Criminal, No. 1.32 (West 2001).
Moreover, *Oviedo* is not a jury instruction case at all, but rather a sufficiency of the evidence case. Further, it concerns the situation where the substance attempted to be transferred is not a controlled substance at all.


[10] Redd's attempt to argue that he did indeed raise this challenge at trial is unavailing. While Redd's counsel did refer to this portion of the instruction while making his objections before the district court, he did not argue that the instruction improperly commented on the evidence. Moreover, the fact that Redd may have raised the challenge off-the-record is of no assistance to Redd. *See Russell*, 130 F.3d at 720 n.2 (declaring that this court will not consider off-the-record objections to instructions). The district court "allow[ed] each side to make whatever record [they wished] in regard to the court's charge," and Redd must have specifically raised the challenge at that time to preserve abuse of discretion review.

13

F.2d 1317, 1322 (5th Cir. 1983) (quoting *Roe v. United States*, 287 F.2d 435, 440 (5th Cir. 1961)). Assuming, *arguendo*, that the district court did err by stating that the box of cocaine had been removed from the truck, this error does not seriously affect the "fairness, integrity, or public reputation" of the trial, and therefore, is not reversible error. *Gordon*, 346 F.3d at 137. The district court instructed the jury that the substantive crime Redd was charged with attempting—possession of cocaine with intent to distribute—required that it find that the "substance was, in fact, cocaine." Redd also did not present any evidence or argument to contradict the government's evidence that the drugs in the box were, in fact, cocaine. Therefore, even under normal standards of review, and certainly on plain error review, the district court's referenced passing comment does not constitute reversible error.

**III. Undue Pressure on the Jury to Reach a Verdict**

Redd asserts that the district court exerted undue pressure on the jury to reach a verdict. Redd argues that this pressure came from the district court: telling Redd's counsel to move along with cross examination, commenting on how the lawyers had wasted time, expressing concern about the length of the trial, commenting on the expense of a mistrial, expressing hope that the jury could reach a verdict the same day it began its deliberations, expressing hope that the jury could return a verdict after an evening recess, and

14

giving a modified *Allen* charge after the jury claimed it could not reach a unanimous verdict.

### A.    *Standard of Review*

In reviewing the district court's conduct of the trial, which includes how it chose to move the trial along, we determine whether the "cumulative effect of the judge's actions amount to an abuse of discretion." *United States v. Gray*, 105 F.3d 956, 964 (5th Cir. 1997).  We likewise review the use of an *Allen* charge for abuse of discretion. *United States v. Winters*, 105 F.3d 200, 203 (5th Cir. 1997).

### B.    *Tempo of Trial and Use of* Allen *Charge*

"[A] trial judge has wide discretion over the 'tone and tempo' of a trial . . . ." *United States v. Sanchez*, 325 F.3d 600, 603 (5th Cir. 2003) (quoting *United States v. Saenz*, 134 F.3d 697, 701 (5th Cir. 1998)).  Nevertheless, "the trial court's efforts to move the trial along may not come at the cost of strict impartiality." *Saenz*, 134 F.3d at 702 (internal quotation and citation omitted). For a claim that the district court appeared partial, we "review the entire record and the 'totality of the circumstances' surrounding the judge's conduct to 'determine whether the judge's behavior was so prejudicial that it denied the defendant a fair, as opposed to a perfect, trial.'" *Sanchez*, 325 F.3d at 603 (quoting *Saenz*, 134 F.3d at 702).  The judge's conduct rises to the level of

a constitutional error only if the conduct, "viewed as a whole, . . . amount[s] to a 'quantitatively and qualitatively' substantial intervention that could have led the jury to 'a predisposition of guilt.'"  *Sanchez*, 325 F.3d at 603 (quoting *Saenz*, 134 F.3d at 702).

"The district court has broad discretion to give an *Allen* charge when the jury indicates that it is deadlocked."  *United States v. Rivas*, 99 F.3d 170, 175 (5th Cir. 1996).  To "uphold an *Allen* charge, (1) the semantic deviation from approved *Allen* charges cannot be so prejudicial as to require reversal and (2) the circumstances surrounding the giving of an approved *Allen* charge must not be coercive."  *Winters*, 105 F.3d at 203.

Considering the record as a whole, we conclude that the conduct Redd asserts as "rushing" the jury was merely the district court's legitimate efforts to move the trial along.  The court's efforts to manage the pace of the trial were well within its discretion and did not reflect or exhibit impartiality against Redd.  Moreover, the record does not support Redd's characterization of the district court's conduct and comments—Redd's assertions of undue pressure to reach a verdict fail to take into account the totality of the circumstances and in some cases simply take quotations from the record out of context.[11]

---

[11] For instance, Redd claims that the district court "again expressed the concern that the trial was too long and placed the blame on the defense."  This is simply incorrect—the record does not support this assertion.  According to the

16

We also reject Redd's claim that the *Allen* charge was improper. Redd does not, and cannot, claim that the *Allen* charge deviated from the language this Circuit has approved in the past. He claims instead that the charge was improper in light of the district court's comments about "hurrying deliberations, avoiding mistrials, and being concerned about additional time and expense." Since the *Allen* charge given by the district court did not vary from the language approved by this Circuit, and as the district court's conduct surrounding the giving of the charge, when viewed in the totality of the circumstances, was not coercive nor otherwise improper, we uphold the giving of the charge.

## IV. Request to Produce a Witness

Next, Redd challenges the district court's refusal to grant his application for a writ of habeas corpus *ad testificandum* to produce an inmate to testify at trial. Redd asserts that this denial violated his Sixth Amendment right to compulsory process.

---

record, the district court stated to the jury:
> "The government tells me that they will probably finish their case in chief on Monday, perhaps by noon. I am concerned that we'll get through Tuesday. The defendants have got to assess what they're going to present and so forth."
> "You might think in terms of maybe having to go past Tuesday and into the Wednesday or maybe even Thursday. I'm sorry I didn't tell you that on the front end, but maybe we won't have to go that long. It just depends on how things break out here."

This comment does not place the blame on the defense and is no more than the court's efforts at informing the jury about the expected length of the trial.

In addition, the district court's comments concerning the costs of a mistrial were in the context of properly filling out the verdict form and in no way involved any pressure on the jury to return a verdict as Redd asserts.

17

### A. Standard of Review

The decision to issue a writ of habeas corpus *ad testificandum* is within the district court's discretion. *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977). However, "[w]hether the trial court's refusal to subpoena a witness violates the Sixth Amendment is . . . a question of law that we review de novo." *United States v. Soape*, 169 F.3d 257, 267 (5th Cir. 1999).

### B. Denial of Request to Produce a Witness

While the Sixth Amendment guarantees a defendant the right to compulsory process, the right is not absolute. *United States v. Gonzalez*, 79 F.3d 413, 424 (5th Cir. 1996). "When requesting a court to subpoena a witness, a defendant . . . has the duty to demonstrate the necessity of the witness's testimony." *Id.* Furthermore, "the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor*.'" *United States v. Valenzuela-Bernal*, 102 S.Ct. 3440, 3446 (1982) (quoting U.S. CONST. amend. VI). Therefore, the defendant must "at least make some plausible showing of how [the witness's] testimony would [be] both material and favorable to his defense." *Valenzuela-Bernal*, 102 S.Ct. at 3446.

On January 22, 2002, the day of jury selection, Redd informed the court that he intended to locate his former cell mate, Joe

18

Reid, with the purpose of calling him to testify. Redd wanted Reid to testify in order to impeach the testimony of two government witnesses—who also had been Redd's cell mates and who were to testify that Redd had confessed to them while in jail. At that time, Redd did not "have any reason to believe" that Reid could be brought to the court in time to testify. At the end of the following day, January 23, Redd formally requested that the district court issue an *ad testificandum* writ for Reid. By this time, Redd's counsel had located Reid in a federal prison in Louisiana, but had not yet contacted him. Despite Redd's insistence as to Reid's location, the district judge said that it had never heard of the prison, and a marshal erroneously told the judge that there was no federal penitentiary in Louisiana. The district court informed Redd that it would probably need to take up the matter *ex parte* and that it needed to know why Redd needed Reid's testimony and why the request was coming at this late date.

Redd did not respond to the court concerning Reid until January 25, the fourth day of trial. As of that time, Redd's counsel still had not yet spoken to Reid and could only speculate as to what Reid might testify. The district court told Redd to contact Reid over the weekend, "because just on the possibility that the man might say something that helps the defendant is, frankly, not enough to grant a writ in the middle of trial to have him brought from Louisiana to possibly interview with the defense

19

counsel." On Monday, January 28, Redd's counsel informed the district court that, even though he had called several times, he had been unable to talk to Reid over the weekend. At the end of the day on January 28, the district court denied the writ to produce Reid, ruling that Redd "does not know what the person would say" and that it was "only speculative as to whether [Reid] would be of any benefit to [Redd]."

The district court did not violate Redd's Sixth Amendment right to compulsory process. Redd had not contacted Reid and could not inform the court concerning the nature of Reid's expected testimony or even that he would be willing to testify.[12] At best, Redd could only speculate about Reid's testimony: Reid was supposedly present during the entire time Redd allegedly confessed to his other cell mates, and Reid had supposedly told certain unnamed persons, who then told Redd, that Reid had never heard Redd's confession. This speculation based on Reid's presence in the jail and on the statements of unnamed others is not sufficient to meet Redd's duty of demonstrating the necessity of Reid's testimony. Redd did not make a plausible showing of how Reid's

---

[12] Redd also argues that he did not have sufficient time to locate and contact Reid because the government informed Redd only three working days (the Thursday before the Tuesday on which trial started) before the start of trial of its intention to use the testimony of the jailhouse informants. Nevertheless, Redd does not adequately respond to the government's contention that it gave Redd proper notice as required—Redd does not cite any authority to show that the government was under an obligation to inform him even earlier of its intention to use the jailhouse informants or that his inability to contact Reid was excused because of the timing of the government's notice. This argument, therefore, fails.

testimony would be both material and favorable to his defense.  The district court's denial of his writ to produce Reid, therefore, was proper.

## V.  Evidence of Surveillance of Redd

Redd challenges the district court's decision to allow testimony concerning the task force's surveillance of him prior to his arrest.  Redd claims that the evidence violated Federal Rule of Evidence 404(b).

### A.  *Standard of Review*

When reviewing a district court's evidentiary rulings, we apply a highly deferential standard—we reverse only if the district court has abused its discretion *and* the defendant is prejudiced. *United States v. Booker*, 334 F.3d 406, 411 (5th Cir. 2003).

### B.  *Evidence Admissible Under Rule 404(b)*

"To be admissible under Rule 404(b), evidence must be relevant to an issue other than the defendant's character and must possess probative value not substantially outweighed by the danger of unfair prejudice."  *Id.* at 411.  In this case, the district court allowed testimony revealing that the drug task force had been conducting surveillance of Redd on the days preceding his arrest.

We reject Redd's argument that the district court abused its discretion by allowing the evidence of the surveillance.  First, contrary to Redd's assertion, the surveillance evidence was not evidence of *other* crimes, but rather evidence related to the crimes

21

for which he was being tried before the district court: the surveillance evidence was probative in that it tied Redd to the blue Expedition and it substantiated the agents' testimony concerning their familiarity with Redd's vehicle—the vehicle they noticed at the truck stop, the originally planned rendevous point, and later followed to Redd's place of business.  Furthermore, the district court limited the evidence's prejudicial effect by not allowing the agents to testify as to why they had placed Redd under surveillance, and by instructing the jury to not consider the surveillance evidence other than to show how the police connected Redd to the blue Expedition.[13]  Therefore, not only did the district court not abuse its discretion, but Redd has also not shown that he was materially prejudiced by the surveillance evidence.

## VI.  Newly Discovered Evidence

### A.  Background

After Redd was convicted, his counsel was able to visit with Joe Reid.  Redd obtained an affidavit from Reid, dated June 14, 2002, in which Reid claims that: (1) he overheard a conversation between the two government jailhouse witnesses in which they discussed sentence reductions they could receive by telling the FBI

---

[13] The court instructed the jury:
    "I have allowed testimony in this case regarding alleged police surveillance of the defendant.  This testimony has been allowed solely for the purpose of showing how the police allegedly connected the defendant with the vehicle.  You must not consider this testimony of surveillance as any proof that the defendant, Starsky Redd, committed any crime or was intending to commit any crime."

that Redd had confessed to the crime; (2) the two government witnesses asked him if he would also lie that he had heard Redd confess to the crime; and (3) he was willing to testify to the above in court. The affidavit states that Reid first told Redd's counsel (or Redd) of this "in May of 2002". Armed with Reid's affidavit, on July 8, 2002, Redd filed a Rule 33 motion for new trial based on newly discovered evidence. Redd had already filed a notice of appeal on May 17, 2002. On September 24, 2002, the district court denied the Rule 33 motion as moot, indicating that because of the pending appeal, it did not have jurisdiction to decide the matter. Redd has not filed a notice of appeal with respect to the district court's denial of the July 8 Rule 33 motion.

## B. *Motion for New Trial Based on Newly Discovered Evidence*

Although a district court may not grant a motion for a new trial based on newly discovered evidence if an appeal is pending, FED. R. CRIM. P. 33(b)(1), it does, nevertheless, have jurisdiction to "entertain the motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case." *United States v. Cronic*, 104 S.Ct. 2039, 2051 n.42 (1984).[14]

---

[14] We have followed this approach: "[W]hen a Rule 33 Motion for New Trial is filed pending appeal, the trial court has the jurisdiction to entertain the motion, either by denying it or by certifying to the appellate court its intention to grant the motion." *United States v. Lopez*, 979 F.2d 1024, 1036–37 (5th Cir. 1992) (citing *Cronic*, 104 S.Ct. at 2051 n.42).

23

Indeed, the district court errs if, solely because the case is pending on direct appeal, it denies the motion for lack of jurisdiction. *Id.* Alternatively, the appellant may make a motion to the appellate court to remand the case so that the district court may fully consider the motion for new trial. *United States v. Fuentes-Lozano*, 580 F.2d 724, 726 (5th Cir. 1978) (per curiam). When the district court has not had the opportunity to review the motion for new trial, because of its erroneous belief that it did not have jurisdiction because of the pending appeal, appellate courts normally will not initially consider the merits of the motion. *United States v. Reeves*, 83 F.3d 203, 208 (8th Cir. 1996).

In this case, the district court erred when it concluded that it did not have jurisdiction to consider Redd's motion for new trial. The district court did have jurisdiction either to deny the motion or to certify to this court its intention to grant the motion. *Lopez*, 979 F.2d at 1036–37. We, therefore, will not consider the merits of the motion at this time, *Reeves*, 83 F.3d at 208, and the motion remains pending before the district court for

its consideration.[15]  We assume that the district court will hold a hearing to determine whether Redd meets the prerequisites for a new trial.  *See United States v. Reedy*, 304 F.3d 358, 372 (5th Cir. 2002) (listing the five elements a defendant must demonstrate to prevail on a motion for new trial based on newly discovered evidence).

## Conclusion

---

[15] Two other alternatives before this court are not appropriate in this case: remand the motion to the district court or rule on the merits of the motion in the first instance.  First, neither party has made a motion before this court to remand the Rule 33 motion to the district court for its consideration.  Redd argues only that this court should consider his motion, reverse his conviction, and grant a new trial.  In addition, a remand to the district court should not be a prerequisite before the district court can properly consider a Rule 33 motion.  *United States v. Graciani*, 61 F.3d 70, 77-78 (1st Cir. 1995).

Second, while in some cases this court arguably has authority to rule on the motion for new trial, such a ruling would not be proper in this case.  In *United States v. Mack*, 695 F.2d 820 (5th Cir. 1983), this court denied a motion for new trial and, in the alternative, a remand to the district court to permit the filing of a motion for new trial.  *Id.* at 823.  In *Mack*, the appellant filed in this court a motion for new trial and requested, in the alternative, a remand to the district court for an evidentiary hearing.  *Id.*  We held that while we could remand to permit the filing and consideration of the Rule 33 motion in the district court, if "no valid purpose could be served by such a remand," we should simply decide the issue.  *Id.*  There would be "no valid purpose" where the issue was "fully inquired into in the trial itself."  *Id.*  The newly discovered evidence consisted only of an affidavit that a witness had earlier indicated that her testimony was coerced.  *Id.*  At trial, the jury had heard her denial, was aware of all the challenges to the veracity of the witnesses, and was properly instructed with respect to the charges of partiality and admitted prior perjury.  *Id.*  Because the matter had been "fully inquired into in the trial itself," there was no valid purpose for the remand, and this court denied the motion for new trial.  *Id.*

In this case, in contrast to *Mack*, the newly discovered evidence has not been fully inquired into at trial.  Furthermore, the district court has not considered the merits of the motion.  The rationale for having this court decide the merits of the motion in the first instance, therefore, do not apply here.

Moreover, we also note that as Redd has not appealed the district court's denial of his Rule 33 motion, the merits of the motion are not properly before this court on appeal.  *See Knapp v. Dow Corning Corp.*, 941 F.2d 1336, 1338 (5th Cir. 1991) ("[F]ailure to file a notice of appeal essentially forecloses [this court's] consideration of the merits of [the] case.").

For the foreging reasons, Redd's conviction is AFFIRMED. Redd's July 8, 2002 motion for new trial based on newly discovered evidence remains pending before the district court.[16]

---

[16]We consider the district court's September 24, 2002 order as simply declining to then rule on the July 8, 2002 new trial motion due to the pending appeal.