# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 24, 2010

No. 09-50132

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANDON RAY CHANDLER,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. 7:08-CR-126-ALL

Before JONES, Chief Judge, SMITH and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Brandon Chandler ("Chandler") appeals his convictions of making a false statement to a bank, bank fraud, and aggravated identity theft. He challenges the sufficiency of the evidence for the identity theft counts, arguing that the gov-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ernment failed to prove he knew the means of identification he used belonged to another person. He also argues that the district court erred in admitting extrinsic evidence of his 1989 conviction of credit card abuse. We affirm.

I.

Chandler was charged with making a false statement to a bank in violation of 18 U.S.C. § 1014, bank fraud in violation of 18 U.S.C. § 1344, and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). The government gave notice that it intended to introduce extrinsic evidence of Chandler's 1989 conviction of credit card abuse. The government attempted to prove that Chandler knowingly used someone else's name and social security number to open an account at Bank of America and then knowingly used the same name to expend funds from that account.

Among its witnesses, the government offered the testimony of Brandy Chandler ("Brandy"), the woman whose identity was stolen, and Roland Ray, a fraud investigator for Bank of America. Brandy testified that she never opened the account and, in fact, never had any kind of account with Bank of America. She stated that she only found out about the account when she applied for a loan with another bank and was denied.

Ray then testified, with the aid of various bank records introduced as government exhibits, regarding activity on the account, which was opened using the name "Brandy Chandler." The account showed Brandy's social security number but Chandler's address and date of birth. The records also showed that Chandler made several calls trying to access the account with his own social security number, beginning eight days after it was opened, but he was denied. He then attempted to gain access to the account in person but was again denied.

The government also introduced copies of two "convenience checks" sent by Bank of America to Chandler. A convenience check allows a customer to ex-

pend funds even if there is no money in the account. Check 3117 was made out to "Brandon R. Chandler" and signed "Brandy R. Chandler"; check 5094 was made out to "Brandon Ray Chandler" and signed "Brandy Chandler." Chandler later stipulated that he wrote those checks out to himself; he never attempted to pay the balance on the account.

Pursuant to Federal Rule of Evidence 404(b), the district court admitted the government's evidence of Chandler's 1989 credit-card-abuse conviction. The court gave a limiting instruction to the jury to consider the conviction only to prove intent, knowledge, or absence of mistake.

At the close of the government's case, Chandler made an unsuccessful Federal Rule of Criminal Procedure 29 motion for judgment of acquittal. He then put his father on the stand, who testified that his son has used the name "Brandy" as a nickname all his life. At the close of all the evidence, the court denied Chandler's renewed motion for judgment of acquittal and delivered another rule 404(b) limiting instruction.

The jury found Chandler guilty on all five counts. He appeals the sufficiency of the evidence regarding the knowledge element of his identity theft convictions and the admission of extrinsic evidence of the prior conviction.

## II.

We review the denial of a properly preserved motion for judgment of acquittal *de novo*. *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007) (citations omitted). Review of the sufficiency of the evidence following a criminal conviction, however, is "highly deferential to the verdict." *United States v. Redd,* 355 F.3d 866, 872 (5th Cir. 2003). This court will affirm if a reasonable trier of fact could conclude that the "elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict."

No. 09-50132

*United States v. Myers*, 104 F.3d 76, 78 (5th Cir. 1997). Proof may be direct or circumstantial, and the jury is [ordinarily] free to choose among reasonable constructions of the evidence. *Mitchell*, 484 F.3d at 768 (quoting *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999)). We review the admission of rule 404(b) evidence for abuse of discretion, though that review is "necessarily heightened" in criminal cases. *United States v. Gonzalez*, 76 F.3d 1339, 1347 (5th Cir. 1996).

III.

A.

Chandler challenges the sufficiency of the evidence only for his aggravated identity theft convictions under § 1028A(a)(1). A conviction of aggravated identity theft requires proof that the defendant (1) knowingly used (2) the means of identification of another person (3) without lawful authority (4) during and in relation to certain violations, including bank fraud and making false statements to a bank. *See United States v. Stephens*, 571 F.3d 401, 404-05 (5th Cir. 2009) (internal quotation marks and citations omitted). Section 1028A(a)(1) requires the government to prove "that the defendant *knew* that the means of identification he or she unlawfully transferred, possessed, or used, in fact, belonged to another person." *Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1888 (2009)." (internal quotation marks omitted). "Means of identification" includes "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . name, social security number, [or] date of birth . . . . " 18 U.S.C. § 1028(d)(7).

More specifically, Chandler challenges the sufficiency of the evidence only with respect to the knowledge element of § 1028A(a)(1)––whether he knew that the means of identification he used belonged to another real person. He claims that he only tweaked his own social security number and had no way of knowing

that the resulting number would belong to someone else. The prosecution, however, produced evidence that undermines Chandler's contention and supports a finding of guilt beyond a reasonable doubt.

First, the government offered evidence that Chandler opened the Bank of America account using the name "Brandy Chandler" and Brandy's social security number, but his own address and date of birth. That evidence reasonably could support an inference that Chandler targeted Brandy because of her similar name and knew that the social security number he used belonged to her. Chandler suggests that, at most, the evidence shows only that he tweaked two digits of his own social security number and that there was no way for him to know the new number would belong to another person.

That argument is implausible. Though the last four digits of his number and her number share two digits, Chandler opened the account under Brady's full social security number, which bears little resemblance to his own. Use of her entire number in conjunction with her similar name supports an inference that Chandler knew the number belonged to someone else. Chandler's suggestion that a random alteration of his own number resulted in his use of Brandy's is vapid.

The government also reproduced two convenience checks for $400 and $600. Chandler made out the first check to "Brandon R. Chandler" and signed it using the name "Brandy R. Chandler." He made out the second to "Brandon Ray Chandler" and signed it using the name "Brandy Chandler." Both times, Chandler was careful to make checks out to his formal name while signing them with the name "Brandy." Moreover, he used those different names to write checks after he was repeatedly warned that the social security number on the account did not match his own. Chandler's endorsement of the checks as "Brandy" while knowing his number was not on the account provides considerable support for the inference that he knew he was accessing funds using Brandy's identity.

No. 09-50132

From Chandler's application information and subsequent conduct, a reasonable juror could have concluded beyond a reasonable doubt that he knew the number he provided belonged to another person. The government, therefore, produced sufficient evidence to support the conviction.

B.

Chandler argues that the district court abused its discretion in admitting evidence of his 1989 conviction of credit card abuse. He contends that the conviction was not sufficiently similar to the charged offense to be relevant and was too remote to retain significant probative value.

Rule 404(b) governs the admissibility of evidence of prior crimes or bad acts:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b). In *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), this court laid out the two-step test for admission of extrinsic evidence of prior offenses or other misconduct under rule 404(b). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *Id*.

At step one, evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action

6

more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Where the evidence sought to be introduced is a prior offense, "its relevance is a function of its similarity to the offense charged." *Beechum*, 582 F.2d at 911. Where the defendant's intent to commit the offense charged is the issue addressed, "the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *Id.* Once the court determines that the prior offense required the same mental state as did the charged offense (and the jury could find that the defendant committed that offense), the evidence satisfies the first step under rule 404(b). *Id.* at 913.

Step two of the *Beechum* analysis involves the familiar rule 403 balancing test: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED R. EVID. 403. The amount of time that has passed between the prior offense and the current charge, and the overall similarity of the two acts, may affect the probative value of the extrinsic evidence. Limiting instructions delivered from the bench substantially diminish the risk of unfair prejudice posed by admission of that evidence. *United States v. Crawley*, 533 F.3d 349, 355 (5th Cir.), *cert denied*, 129 S. Ct. 522 (2008).

First, Chandler claims that his prior conviction is not relevant, because it did not involve the same mental state as the charged offenses. The crime to which he pleaded guilty in 1989, however, involved the same state of mind required for conviction under §§ 1014, 1344, and § 1028A. His 1989 credit-card-abuse conviction came under § 32.31 of the Texas Penal Code. The information in that case stated that "the Defendant fraudulently obtained property . . . by presenting an American Express credit card *with knowledge* that the card had

not been issued to said Defendant and *with knowledge* that said card was not used with the effective consent of [the cardholder]" (emphasis added). Likewise, §§ 1014, 1344, and 1028A require a defendant to commit the proscribed acts "knowingly." The similarity in mental state between the extrinsic offense and the charged crimes makes the 1989 conviction relevant to the issue of intent and satisfies step one of *Beechum*.

In the alternative, Chandler argues that the district court abused its discretion in admitting evidence of his prior conviction, because that evidence was substantially more prejudicial than probative. He avers that evidence of the conviction had low probative value, because of the seventeen years that elapsed between his conviction and subsequent offense, and that the introduction of his prior conviction was likely to inflame the jury.

Despite the relatively long period of time between the offenses, the district court did not abuse its discretion in finding that the rule 403 balance favored admission of the prior conviction. We have upheld admission of evidence older than seventeen years under rule 404(b). *See United States v. Arnold*, 467 F.3d 880, 885 (5th Cir. 2006) (citing cases upholding admission of evidence as old as eighteen years). Moreover, the passage of time since a prior bad act or crime is not alone dispositive of admissibility. *See id*; *United States v. Brossard*, 80 F.3d 1025, 1040 (5th Cir. 1996). It is rather only one factor in determining probative value that is to be considered along with the similarity of the acts and the other evidence available to prove the disputed element.

"The probative value of the extrinsic offense correlates positively with its likeness to the offense charged." *Beechum*, 582 F.2d at 915. Both the extrinsic and charged offenses involve the perpetration of a financial fraud whereby Chandler misrepresented his identity for his own pecuniary gain. The significant similarity of the crimes imbues the prior conviction with considerable probative value. Moreover, the conviction was not repetitive or cumulative in rela-

tion to the government's other evidence. It therefore retained its probative value within the prosecution's case.

Though the prior conviction posed some threat of prejudice, the rule 403 balance requires exclusion only where "the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Id.* at 915 n.20 (citations and internal quotation marks omitted). Not only is that a high standard for exclusion, but the district court also made laudable efforts to minimize the chance of unfair prejudice by giving two separate limiting instructions, one after the government introduced the conviction and one before deliberation. Both instructions warned jurors against the forbidden propensity inference and carefully delineated the limited purposes for which evidence of the conviction was relevant. Whatever risk of unfair prejudice remained after delivery of those instructions did not substantially outweigh the probative value of the conviction.

The district court properly applied the two-step approach under *Beechum*. We cannot say, therefore, that the court abused its discretion in admitting extrinsic evidence of Chandler's 1989 conviction of credit card abuse.

The convictions are AFFIRMED.