IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 12, 2009

Charles R. Fulbruge III
Clerk

No. 06-60806

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

STARSKY DARNELL REDD; CHARLES H WELLS; DELORES BROWN
REDD; SIMON L. TAYLOR

Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 3:04-CR-24-WS

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

## I. INTRODUCTION

The indictment in this case charged nine persons with conspiracy to launder money and various substantive counts of money laundering. Those charged included Starsky Darnell Redd ("Starsky"), Delores Brown Redd ("Delores"), Simon L. Taylor, and Charles H. Wells (collectively "Appellants"). After a jury trial, each Appellant was convicted on at least one count of the

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

indictment. Appellants now appeal their convictions on various grounds. For the reasons that follow, we AFFIRM the district court's judgment in all respects.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The evidence at trial showed that Starsky has been dealing drugs since he was in high school. In 1994, Starsky began dealing drugs with a man named Billy Joe Smith. They bought their drugs from three individuals in Dallas, Texas, and used couriers to transport the drugs from Dallas to Jackson, Mississippi via Greyhound bus.

Two years later, in 1996, the Government alleges Starsky began funneling his drug proceeds through other people to purchase property for himself. Delores and Hutsut Redd, Starsky's parents, paid $10,000 down on a house located at 711 Barwood Drive, which the Government contends was actually paid out of Starsky's drug proceeds. Also, on August 1, 1996, Simon Taylor, a friend of Starsky's, paid $21,101.87 for a blue-green 1993 Suburban, which he titled in his own name. The Government alleges that this money likewise came from Starsky's drug trafficking proceeds.

In May 1997, Starsky was arrested while loading 200 pounds of marijuana into the blue-green Suburban Taylor had purchased the previous year. Taylor still claimed that the Suburban belonged to him and that Starsky had borrowed it without his permission. The Mississippi Bureau of Narcotics returned the car to Taylor, but, according to Taylor, he was so embarrassed about the Suburban being involved in a drug bust, he parked it in a pasture for a few months and then sold it.

That same month, $11,000 cash was deposited into Taylor's business bank account, and Taylor withdrew $11,000 from his business bank account to pay for Starsky's bail and attorney's fees. There was also a $5,000 deposit in Taylor's personal bank account from Arcadian Homes, which was allegedly compensation for construction work Taylor had performed. Then Taylor wrote a $5,000 check

from his personal bank account to pay Starsky's remaining attorney's fees. Taylor testified that all the money he used to pay for Starsky's bond and attorney's fees was his own.[1]

On July 31, 1998, Taylor purchased a 1995 Lexus for $29,340, again obtaining title in his own name. Evidence at trial showed that Delores drove the Lexus most of the time and that the car was repossessed at her home in 2000.

On February 9, 1999, Starsky paid $5,000 or $6,000 cash for a 1974 Oldsmobile 88. Starsky used the car as his own, but the car's title was in Delores's name and the certificate of title reflected her home address.

Starsky also purchased a 1997 Mercedes through a man named Vernon Archer, Jr. Archer paid for the Mercedes with $20,000 cash given to him by Starsky, and made subsequent payments on the car using Starsky's money. In December of 1999, Archer decided that he no longer wanted the Mercedes in his name, so the title was transferred to Charles Wells, a used car salesman to whom Starsky and Honer had sold a one-half kilo of cocaine for $12,000. Wells admitted that he was asked by "a subject" to place the Mercedes in his name and that he was paid a fee to assume the title and never take possession of the car.

On February 11, 2000, Starsky gave his friend, Billy Tucker, $14,300 cash to purchase a 1995 Tahoe. Tucker signed Starsky's name to the sales contract and registered the vehicle in the name of "Lil Mann Records," which was a record label Starsky had started in 1996.

In mid-2000, Tucker also helped Starsky orchestrate a $100,000 drug shipment. However, Tucker struck a deal with the Federal Bureau of Investigation (FBI); he would receive $30,000 in exchange for his cooperation. Based on information from Tucker, a narcotics task force intercepted a tractor-trailer carrying ten kilos of cocaine and 775 pounds of marijuana. The drivers

---

[1] The charges stemming from Starsky's 1997 arrest were ultimately dismissed because the drugs and all the evidence were lost.

of the tractor-trailer led the task force to a parking lot adjacent to 4125 West Northside Drive, a building where Starsky kept his office. Starsky was shot in an altercation with the police, arrested, and taken to the hospital.

At the hospital, Delores discussed with Tucker and others how to avoid the seizure of Starsky's assets. Delores told Tucker that she planned to return the 1995 Lexus to Taylor because he had a business that could support the purchase. Taylor again helped with Starsky's attorney's fees, signing over his interest in a bond totaling $6,441.50 with interest to Starsky's attorney. Delores sold several of Starsky's assets and signed a promissory note on her home to secure Starsky's remaining attorney's fees.

Based on these facts, among others, Appellants were charged in a multi-count indictment for conspiracy to commit money laundering and various substantive counts of money laundering. A jury found Starsky guilty of conspiracy to commit money laundering and four substantive counts of money laundering; Delores was found guilty of conspiracy to commit money laundering and two substantive counts of money laundering; Wells was found guilty of one substantive count of money laundering; and Taylor was found guilty of conspiracy to commit money laundering. Appellants now challenge their convictions on various grounds.

## III. DISCUSSION

Because there are multiple Appellants, each with various grounds for appeal, we will separately address each Appellant and his or her arguments.

### A. STARSKY REDD

#### 1. Speedy Trial

##### a. Statutory Claims

Starsky contends that the district court violated his statutory right to a speedy trial. "We review 'the factual findings supporting a Speedy Trial Act ruling for clear error and the legal conclusions de novo.'" United States v. Parker,

505 F.3d 323, 326 (5th Cir. 2007), cert. denied, 128 S. Ct. 1323 (2008) (quoting United States v. Narviz-Guerra, 148 F.3d 530, 538 (5th Cir. 1998)).

The Speedy Trial Act requires commencement of trial within seventy non-excludable days of the information or indictment, or when the defendant first appears before the court, whichever is later. 18 U.S.C. § 3161(c)(1) (1990) (current version at 18 U.S.C. § 3161 (2008)). Certain actions toll the seventy-day clock. Parker, 505 F.3d at 326; see § 3161(h). For example, the speedy trial clock is tolled "during all delays between the filing of a motion [including one by a co-defendant] and the conclusion of the hearing on that motion, regardless of whether the delay in holding that hearing is 'reasonably necessary.'" Parker, 505 F.3d at 327 (internal quotation marks and citations omitted). The speedy trial clock is likewise tolled for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." § 3161(h)(7). Finally, "a district court [may] grant a continuance and . . . exclude the resulting delay if the court, after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial." Zedner v. United States, 547 U.S. 489, 498-99 (2006) (citing § 3161(h)(8)).

In the present case, the last co-defendant was arraigned on March 22, 2004, which would normally prompt the speedy trial clock to commence running. See § 3161(c)(1). The clock was tolled during the following periods of delay occasioned by motions for continuance filed or joined in by the defendants: March 19, 2004 through July 11, 2005; September 15, 2005 through November 28, 2005; and January 3, 2006 through February 21, 2006 (when trial began). See §§ 3161(h)(1)(F), 3161(h)(8)(A).

Additionally, on July 14, 2005, the Government filed a Motion for Inquiry into Potential Conflict of Interest.[2]  The district court resolved and disposed of the conflict-of-interest issue on September 14, 2005.  Accordingly, the speedy trial clock was tolled between July 14 and September 14, 2005.  See §§ 3161(h)(1)(F), 3161(h)(8)(A).

In sum, the only non-excludable periods of time were (1) three days between July 11 and July 14, 2005; and (2) thirty-six days between November 28, 2005 and January 3, 2006.  Because only thirty-nine days lapsed on the speedy trial clock, Starsky's rights under the Speedy Trial Act were not violated.  See § 3161(c)(1).

### b.  Constitutional Claims

Starsky also contends that the district court violated his constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution.  "The standard of review for Sixth Amendment claims is bifurcated."  Parker, 505 F.3d at 328.  First, we review findings of fact for clear error.  United States v. Frye, 372 F.3d 729, 735 (5th Cir. 2004).  Under the clear error standard, this court "'defer[s] to the findings of the district court unless [this court is] left with a definite and firm conviction that a mistake has been committed.'"  Id. (quoting Payne v. United States, 289 F.3d 377, 381 (5th Cir. 2002)).  Second, we review the district court's evaluation and balancing of the four factors articulated in Barker v. Wingo, 407 U.S. 514 (1972).  It is unsettled in our circuit whether the district court's balancing of the Barker factors is reviewed de novo or for clear error.  Parker, 505 F.3d at 328.  We need not resolve this issue here because the Government prevails under either standard.

---

[2] As reflected by the docket entry dated March 29, 2005, Chokwe Lumumba, counsel for Starsky, Delores, and Sheneatha Brown, was suspended from the practice of law by the Mississippi Supreme Court.  Lumumba's suspension was the basis for the Government's motion.

In Barker, the United States Supreme Court set forth four factors to consider in analyzing Sixth Amendment claims: "(1) length of the delay, (2) the reason for [the delay], (3) the defendant's diligence in asserting his Sixth Amendment right, and (4) prejudice to the defendant resulting from the delay." Parker, 505 F.3d at 328 (quoting United States v. Hernandez, 457 F.3d 416, 420 (5th Cir. 2006)). "In undertaking a 'full Barker-analysis,' we initially look to 'the first three factors . . . in order to determine whether prejudice will be presumed or whether actual prejudice must be shown.'" Hernandez, 457 F.3d at 421 (quoting Frye, 372 F.3d at 736). "Prejudice may be presumed where the first three factors weigh 'heavily' in the defendant's favor." Id. However, "if the first three factors do not weigh so heavily as to justify a presumption of prejudice, then the defendant bears the burden of both establishing actual prejudice and demonstrating that such prejudice is sufficient to outweigh the other three factors." United States v. Frye, 489 F.3d 201, 209 (5th Cir. 2007), cert. denied, 128 S. Ct. 941 (2008) (quoting United States v. Serna-Villarreal, 352 F.3d 225, 230 (5th Cir. 2003)). "It will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." United States v. Bieganowski, 313 F.3d 264, 284 (5th Cir. 2002).

The Supreme Court has described the length-of-delay factor as "a triggering mechanism." Barker, 407 U.S. at 530; see also United States v. Jackson, 549 F.3d 963, 971 (5th Cir. 2008). The accused must "allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay," and then we must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett v. United States, 505 U.S. 647, 651–52 (1992). Generally, this Court has presumed prejudice from pretrial delay "only in cases in which the post-indictment delay lasted at least five years."

7

Serna-Villarreal, 352 F.3d at 232. A one-year delay is generally sufficient to warrant a full analysis of the Barker factors. Id. at 230.

Twenty-three months lapsed from the time the last co-defendant was arraigned until jury selection initiated the trial. Because this interval is longer than one year, we engage in a full Barker analysis; however, twenty-three months is insufficient to prompt a presumption of prejudice, and it does not weigh heavily in Starsky's favor. See Serna-Villarreal, 352 F.3d at 230–32.

Reasons for the delay in the present case weigh against Starsky. This case was complex, involving multiple defendants with varying roles and more than 9,000 pages of financial documents comprising discovery. Furthermore, much of the delay resulted from the multiple continuances granted at Starsky's request. Finally, there is no support in the record for Starsky's allegation that the Government caused the delay in a tactical effort to secure testimony advantageous to its case.

The third factor considers Starsky's diligence in asserting his Sixth Amendment right. Given Starsky's concession that this factor does not weigh in his favor and the fact that Starsky's own motions resulted in multiple delays, this factor weighs against Starsky.

The final factor we must consider is the prejudice Starsky suffered as a result of the delay. The Sixth Amendment's Speedy Trial Clause contemplates three types of prejudice: (1) "'oppressive pretrial incarceration,'" (2) "'anxiety and concern of the accused,'" and (3) "'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654 (quoting Barker, 407 U.S. at 532) (alteration in original). Starsky was already in custody for a previous conviction, so he did not suffer oppressive pretrial incarceration. See Jamerson v. Estelle, 666 F.2d 241, 244 (5th Cir. 1982); see also Kowey v. Collins, 980 F.2d 1445, 1992 WL 366435, at *2 (5th Cir. Dec. 10, 1992) (unpublished opinion). While Starsky argues that he

suffered "anxiety and concern," he offers no evidence indicating that his alleged anxiety was "of such an extreme degree that it differed in any way from that which would naturally be expected to accompany a defendant's awareness of pending charges." Goodrum v. Quarterman, 547 F.3d 249, 263 (5th Cir. 2008), petition for cert. filed (U.S. Oct. 30, 2008) (No. 08-7121). Lastly, despite his allegations to the contrary, Starsky points to no evidence in the record demonstrating that the delay was a product of the Government's litigation strategy.

In sum, Starsky was not denied his constitutional right to a speedy trial under the Sixth Amendment.

2. Starsky's 1997 Arrest for Possession with Intent to Distribute Marijuana

Before opening statements, the district court heard Starsky's motion in limine to prevent the Government from presenting evidence of Starsky's 1997 arrest for attempted possession of marijuana with intent to distribute. That charge was ultimately dismissed with prejudice on the Government's motion because the evidence had been destroyed. The district court denied Starsky's motion in limine. Starsky again objected at trial when the evidence was received, and the district court overruled his objection. On appeal, Starsky argues that the district court erred on grounds of collateral estoppel and res judicata by admitting into evidence Starsky's 1997 arrest.

Neither collateral estoppel nor res judicata applies to the present case because no issues were determined in the prior case, negating collateral estoppel, and the causes of action are different and arise from different transactions, negating res judicata. United States v. Yeager, 521 F.3d 367, 371 (5th Cir. 2008), cert. granted, 129 S. Ct. 593 (U.S. Nov. 4, 2008) (No. 08-67); Stevenson v. Int'l Paper Co., 516 F.2d 103, 108-09 (5th Cir. 1975).

3. Internal Revenue Service (IRS) Agent Jerry Porter's Testimony[3]

IRS Agent Porter testified at trial that neither Delores nor Taylor had sufficient legitimate funds to make the purchases that were the subjects of their indictments. Agent Porter's testimony is now being challenged on appeal on the grounds that he acted as an expert witness without having been tendered and accepted by the court as an expert.

When the complaining party fails to object at trial, as is the case here, we review a district court's evidentiary ruling only for plain error. United States v. Thompson, 454 F.3d 459, 464 (5th Cir. 2006).[4] To demonstrate plain error, the district court must have committed an error that was clear or obvious and that affected the defendant's substantial rights. Id. Even if the district court plainly erred, we will not correct the error unless "'the error has a serious effect on the

---

[3] Starsky, Delores and Simon Taylor all challenge Agent Porter's testimony as impermissible expert testimony. This section addresses each of their challenges on this issue.

[4] Taylor concedes that we should review this issue as it pertains to him only for plain error. Starsky and Delores, however, advocate for an abuse-of-discretion standard. We conclude that neither Starsky nor Delores properly objected so as to warrant review under the less strict abuse-of-discretion standard. Before trial, Starsky's attorney made a motion in limine to the court, which Delores joined, noting that Agent Porter had not been designated as an expert witness and objecting to any testimony by Agent Porter concerning "ultimate conclusions of fact, whether the case amounts to money laundering or not, and whether this would be a typical money laundering activity." The district court declined to rule on the motion and responded that Defendants could object to the questions as they were asked. The only time Starsky's counsel objected to Agent Porter's testimony as improper expert testimony was after the prosecutor asked Agent Porter how to determine whether drug proceeds were involved in financial transactions. But this portion of Agent Porter's testimony is not that which is being challenged on appeal. When the prosecutor solicited from Agent Porter the testimony at issue on appeal, namely whether Delores and Taylor had "sufficient legitimate sources or a legitimate source of funds" to have made their respective purchases, Starsky's counsel objected but without stating the grounds for the objection, and Delores's counsel objected only to foundation, not that such testimony constituted impermissible expert testimony. Accordingly, we review this issue as it pertains to Starsky, Delores, and Taylor for plain error only.

fairness, integrity, or public reputation of judicial proceedings.'"  Id. (quoting United States v. Alvarado-Santilano, 434 F.3d 794, 795 (5th Cir. 2005)).

Federal Rule of Evidence 701 governs the admissibility of opinion testimony by lay witnesses. "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field."  United States v. Yanez Sosa, 513 F.3d 194, 200 (5th Cir. 2008) (internal quotation marks and citations omitted).  This Court has "allowed lay witnesses to express opinions that required specialized knowledge" where "[n]o great leap of logic or expertise was necessary for one in [the witness's] position to move from his observation . . . to his opinion."  United States v. Riddle, 103 F.3d 423, 428 (5th Cir. 1997) (citing Soden v. Freightliner Corp., 714 F.2d 498, 510–12 (5th Cir. 1983)); see also United States v. Grote, 632 F.2d 387, 390 (5th Cir. 1980) (allowing an IRS official to compare a defendant's tax returns by characterizing some as "acceptable"). "'[T]he modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.'"  Riddle, 103 F.3d at 429 (quoting Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 403 (3d Cir. 1980)).

The district court did not plainly err by admitting Agent Porter's testimony concerning whether Delores had sufficient legitimate funds to purchase her home.  Agent Porter personally investigated the money laundering charges against Appellants.  Agent Porter studied Delores's "income tax documentation, and records relating to [her and her husband's] . . . financial information," including her and her husband's multiple bankruptcies.  Agent Porter also compared Delores's and her husband's combined monthly income against their combined monthly expenses as stated in one of the bankruptcy petitions, which indicated that for one month in particular, after living expenses,

they had $193.07 left to spend. Additionally, Agent Porter's investigation revealed that Delores's husband's loan history between 1996 and 2001 included substantial consumer loans at high interest rates. Equipped with personal knowledge that Delores had little, if any, disposable income, multiple bankruptcies, a foreclosure on her prior home, no filed tax returns of her own, and her husband's high interest consumer loans, "no great leap of logic or expertise was necessary" for Agent Porter to conclude that Delores did not have sufficient legitimate funds to purchase her home. He was merely a vehicle for publishing this evidence to the jury. Therefore, the district court did not plainly err in admitting his testimony.

Likewise, the district court did not plainly err by admitting Agent Porter's testimony that Taylor did not have sufficient funds to purchase the vehicles that were the subjects of his indictment or to pay for Starsky's attorney's fees. Agent Porter investigated Taylor's finances by reviewing his tax returns, his loan history, and his personal and business bank accounts. Based on his personal knowledge of Taylor's finances, it was "no great leap of logic" for Porter to conclude that Taylor did not have sufficient legitimate funds to pay for Starsky's attorney's fees and purchase a Suburban, a Lexus, and a Chevrolet Impala.

As for any argument that there were other potential sources of unreported income that Appellants could have used to finance their respective purchases and expenditures, Appellants could have illuminated this point on cross-examination of Agent Porter. We do not find plain error in the district court's admission of Agent Porter's testimony as to whether the Appellants had sufficient legitimate funds to make the purchases at issue.[5]

---

[5] Taylor also argued in his appellate brief that Agent Porter impermissibly testified as to the ultimate issue of the case. "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704(a). Moreover, Porter did not testify to the ultimate issue of the case, namely whether the defendant conspired to or actually entered into a financial transaction which the defendant knew involved the proceeds of illegal activity and which the defendant

4.  Jury Instructions

a.  Denial of the Specific Intent Instruction

At trial, Starsky requested an instruction that stated:

The crimes charged in this case are serious crimes which require proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act.  To establish specific intent, the government must prove that the defendant knowingly did an act which the law forbids purposely intending to violate the law.  Such intent may be determined from all the facts and circumstances surrounding the case.  An act or failure to act is knowingly done if done voluntarily and intentionally and not because of mistake or accident or some innocent person.

The district court denied Starsky's instruction and instructed the jury as follows:

For you to find any defendant guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt.  First, that the defendant knowingly conducted a financial transaction.  Secondly, that the financial transaction involved the proceeds of a specified unlawful activity, namely, illegal drug trafficking.  Thirdly, that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.  And fourthly, that the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds.[6]

The court further instructed the jury:

The word knowingly, as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.  So to say that

---

knew was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds.  Porter simply testified as to whether Taylor and Delores had sufficient legitimate funds to support particular expenditures.  Taylor's ultimate-issue argument is without merit.

This instruction partially mirrors Fifth Circuit Pattern Jury Instructions: Criminal § 2.76 (2001), which addresses the laundering of monetary instruments under 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

someone acts knowingly means that the person acted voluntarily and intentionally and not because of mistake or accident.[7]

Starsky now challenges the district court's denial of his proffered instruction. This Court reviews a district court's denial of a proffered jury instruction for abuse of discretion. United States v. Porter, 542 F.3d 1088, 1093 (5th Cir. 2008).

A district court abuses its discretion in denying a requested instruction if the instruction: (1) was a substantively correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense. Id. (citing United States v. Jobe, 101 F.3d 1046, 1059 (5th Cir. 1996)). If the instruction sought fails to meet any one of these three conjunctive elements, the trial judge acts within his discretion in declining to accept that jury instruction. Id.

Starsky's proposed instruction fails to satisfy the second and third prongs of the Jobe test. The district court's instruction substantially covered Starsky's requested instruction. Furthermore, Starsky never argued at trial that although he did the acts knowing that they would conceal or disguise, he did not intend them to have that effect. Without advancing this argument at trial, Starsky cannot claim on appeal that his ability to present a given defense was substantially impaired. Thus, the district court was within its discretion in denying Starsky's specific intent instruction.

b.  Denial of the DR-10 Instruction

Starsky contends that the district court abused its discretion by denying his proffered instruction stating, "payments for personal benefit out of previously laundered proceeds do not themselves constitute money laundering nor do expenditures for personal consumption unless they are designed to conceal the nature or source of the money." Starsky complains that no other instruction

---

[7] See Fifth Circuit Pattern Jury Instructions: Criminal § 1.37.

mentioned spending for personal benefit or consumption. Again, Starsky cannot satisfy the Jobe test. The only legally relevant portion of Starsky's requested instruction is that the expenditures at issue cannot constitute money laundering unless designed to conceal the nature or source of the money. The district court instructed the jury that the transactions had to have been "designed in whole or in part to conceal," and therefore substantially covered the subject matter of the requested charge. Thus, the second element of Jobe is not met.

    c. The Term "Proceeds"

The district court instructed the jury members that, in order to convict, they must find, among other things, that "the financial transaction involved the proceeds of a specified unlawful activity, namely, illegal drug trafficking," and that "proceeds from an illegal activity can include any property or any interest in property that someone acquires or retains as a result of the commission of the underlying specified unlawful activity. . . . Proceeds can be any kind of property, not just money." Starsky contends on appeal that the district court should have limited its definition of "proceeds" to include only "profits."

Where a party fails to object on specific grounds to the district court's jury charge, we review only for plain error. FED. R. CRIM. P. 30, 52(b); United States v. Redd, 355 F.3d 866, 874–75 (5th Cir. 2003). Starsky concedes that his failure to object in the district court results in a plain error standard of review, discussed above. "Error in a [jury] charge is plain only when, considering the entire charge and evidence presented against the defendant, there is a likelihood of a grave miscarriage of justice." United States v. Sellers, 926 F.2d 410, 417 (5th Cir. 1991).

In United States v. Santos, 128 S. Ct. 2020 (2008), a four-justice plurality concluded that the term "proceeds" in 18 U.S.C. § 1956(a)(1) (2008) means "profits," not "receipts." Id. at 2025. Justice Stevens concurred in the judgment, agreeing with the ultimate conclusion that a gambling business's revenue used

to pay essential operating expenses is not "proceeds" under § 1956, but interpreting "proceeds" to mean "profits" for some predicate crimes and "receipts" for other predicate crimes. Id. at 2033 (Stevens, J., concurring).

This Court has already had occasion to comment on Santos. In United States v. Brown, No. 05-20997, 2008 WL 5255903 (5th Cir. Dec. 18., 2008), we noted that "not even after Santos is the law 'clear' on what the prosecution should be required to prove as 'proceeds' in [a case involving the illegal sale of prescription drugs]; or, if profits must be proved, how this must be done under these circumstances." Id. at *10. Thus, any error by the district court was neither clear nor obvious. Furthermore, even if the district court had limited the term "proceeds" to "profits," the error did not affect Starsky's substantial rights. See id. In discussing how profits may be proven, Justice Scalia explained in Santos:

> The "proceeds of specified unlawful activity" are the proceeds from the conduct sufficient to prove one predicate offense. Thus, to establish the proceeds element under the "profits" interpretation, the prosecution needs to show only that a single instance of specified unlawful activity was profitable and gave rise to the money involved in a charged transaction. . . . What counts is whether the receipts from the charged unlawful act exceeded the costs fairly attributable to it.

Santos, 128 S. Ct. at 2029. Here, there was ample evidence that Starsky's drug trafficking was profitable. "Having provided evidence of this, the [G]overnment has sufficiently supported its case." Brown, 2008 WL 5255903 at *10.

### d. Supplemental Instructions[8]

Approximately two and one-half hours into its deliberations, the jury submitted the following question to the district court: "Dear Honorable Judge

---

[8] In addition to Starsky, Delores and Taylor also challenge the district court's supplemental jury instructions. We address their arguments collectively in this section of the opinion.

Wingate, we, the Jurors, are requesting a copy of the codes, C-O-D-E-S (U.S.), you disclosed in the court pertaining [to] this case. Thank you." After summoning the jury, the district court stated:

> I have here a note . . . I don't quite understand the note. If you are asking for Sections 1956 and also for the ones charged in the indictment, the Court provides the elements of that charge to you. You don't see the code itself. Now, if you wish to have any matters reread to you, to have 1956 reread to you or 1957, any one or all of those, I will reread them to you and tell you what the law is concerning those specific matters.
>
> So 1956(h) and 1956(a)(1) and 1957 are the three codes that [are] mentioned in the indictment. Now, if those are the ones that you are referring to, then I will reread the elements in the entirety to you with regard to all three of those if you wish me to do so.

The jury took a brief recess to determine exactly what it wanted the district court to do. While the jury was out, the district court asked counsel, "is there any objection to the procedure I've just explained to the jury from the Government?" Neither the prosecution nor any of the defense counsel objected. The jury came back from recess and asked for the information to be read in its entirety again.

The supplemental instructions lasted approximately two and one-half hours, during which time no defendant made an objection or sought leave to approach the bench. After the court finished its supplemental jury instructions, Delores's counsel objected that the instructions advocated the Government's theory of the case, did not include foreseeability as an element of coconspirator liability, and overemphasized coconspirator liability as well as the lack of necessity for a formal agreement. No other Defendant joined Delores's objection until the following morning. Appellants now argue on appeal that the district court's supplemental instructions were unnecessarily long, repetitious, and confusing; they overemphasized the Government's version of the facts; they overemphasized conspiracy; and they incorrectly instructed the jury on the

essential elements of Pinkerton coconspirator liability,[9] aiding and abetting,[10] and money laundering.[11]

We will only review the district court's supplemental instructions to the jury for plain error. Where a party fails to object on specific grounds to the district court's jury charge, this court reviews only for plain error. FED. R. CRIM. P. 30, 52(b); Redd, 355 F.3d at 875. Despite Appellants' claim that the district judge committed obvious error by failing to read verbatim the original jury instructions, nobody found the error so obvious at trial so as to object, ask to

---

[9] The supplemental instruction on coconspirator liability stated:

It is a kind of partnership in crime in which each member becomes the agent of every other member. . . . In a business partnership, then one person can go and purchase something for the partnership, not pay for it, and both parties are liable. Even the one who didn't go and actually buy it, because if they are in business as a partnership, then each one of the partners can enter into a contract for the other. But here notice I said it is a kind of partnership in crime in which each member becomes the agent of every member. So what one member does as part of a conspiracy is attributable to the other member who is part of that conspiracy. If I were to conspire with three people to violate the law, if one of those persons in furtherance of that agreement does something, then I am liable for what that person does if it was in furtherance of our agreement, even though I didn't do it.

[10] The district court instructed the jury:

If I enter into an understanding with another person that we are going to violate the law, then I don't have to do everything to violate that law so long as my partner does something in furtherance of our understanding that we are going to violate the law. . . . The law recognizes that ordinarily anything a person can do for him or herself may also be accomplished by him or her through the direction of another person as his or her agent or by acting in concert with or under the direction of another person or persons in a joint effort or enterprise.

[11] The portion of the supplemental charge that Appellants take issue with reads as follows:

In order for there not to have been a violation, if you were to find that drug money was used, if you were to find that the party knew that it was drug money, if you were to find that the individual had no intentions whatsoever of trying to conceal the ownership, the source of the money, but even if there are other reasons, so long as that element is shown, then a defendant would be guilty.

18

approach the bench, request to be heard on the matter outside the presence of the jury, or proffer curative instructions. Appellants subsequent objections simply were not timely, and therefore result in a plain error standard of review. "Error in a [jury] charge is plain only when, considering the entire charge and evidence presented against the defendant, there is a likelihood of a grave miscarriage of justice." Sellers, 926 F.2d at 417.

In reviewing supplemental jury instructions, we are "'guided by lofty, but very general, propositions and admonitions.'" United States v. Le, 512 F.3d 128, 132 (5th Cir. 2007), cert. denied, 129 S. Ct. 55 (2008) (quoting United States v. Carter, 491 F.2d 625, 633 (5th Cir. 1974)). We "consider[] whether 'the court's answer was reasonably responsive to the jury's questions and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it.'" Id. (quoting United States v. Cantu, 185 F.3d 298, 306 (5th Cir. 1999)). "'Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge.'" Id. (quoting Bollenbach v. United States, 326 U.S. 607, 612, (1946)). "The district court must meet 'the high standard of balance and fairness necessary to assure [the] defendant a fair trial.'" Id. (quoting Carter, 491 F.2d at 633). "Accordingly, the touchstone of the inquiry might be described as whether there was prejudice to the defendant." Id.

Here, the supplemental instructions do not constitute plain error. The district court only instructed the jury as to what the Government had alleged or contended, and therefore did not overemphasize the Government's theory of the case. Nor did the district court abuse its discretion in describing money laundering under § 1956. The supplemental instructions repeatedly made clear that, to satisfy the intent element of money laundering, a defendant must, in whole or in part, intend to conceal or disguise the source or ownership of the

money. The supplemental instruction on aiding and abetting tracked statutory language and the language of the statute's commentary. See 18 U.S.C. § 2 (2000). Assuming arguendo that the district court's explanation of coconspirator liability should have included the requirement that the coconspirator's act be "reasonably foreseeable" to the defendant, such an omission does not constitute plain error. Our precedent approves of, and widely accepts, jury instructions articulating Pinkerton's requirements for coconspirator liability in the disjunctive. See, e.g., United States v. Thomas, 348 F.3d 78, 84–85 (5th Cir. 2003); see also Fifth Circuit Pattern Jury Instructions: Criminal § 2.22. The original instructions in the present case articulated both requirements of coconspirator liability, and therefore we cannot say that "there is a likelihood of a grave miscarriage of justice." Sellers, 926 F.2d at 417. Under a plain error standard of review, the district court's supplemental instructions are not grounds for reversal.

5. Sufficiency of the Evidence

This Court's review of the sufficiency of the evidence following a criminal conviction is narrow and highly deferential to the verdict. Redd, 355 F.3d at 872. We will affirm the conviction if "'a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt.'" United States v. Klein, 543 F.3d 206, 212 (5th Cir. 2008), petition for cert. filed (U.S. Jan. 13, 2009) (No. 08-8207) (quoting United States v. Westbrook, 119 F.3d 1176, 1189 (5th Cir. 1997)). "'We must consider the evidence, all reasonable inferences drawn therefrom, and all credibility determinations in the light most favorable to the prosecution.'" Id. (quoting Westbrook, 119 F.3d at 1189). "If 'the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' a defendant is entitled to a judgment of acquittal." United States v. Brown, 186 F.3d 661, 664 (5th Cir.

1999) (quoting United States v. Schuchmann, 84 F.3d 752, 754 (5th Cir. 1996)). Given our very narrow and highly deferential standard of review, and given that we must view the evidence in a light most favorable to the prosecution, there was sufficient evidence to support Starsky's convictions.

6. District Court's Use of the 2005 Sentencing Guidelines

Starsky challenges the district court's application of the 2005 Sentencing Guidelines rather than the 2000 Sentencing Guidelines. He argues that the district court (1) violated United States v. Booker, 543 U.S. 220 (2005), by using a preponderance of the evidence standard to find the existence of a post-November 1, 2001 conspiracy; and (2) violated the Ex Post Facto Clause of the United States Constitution. We review the district court's application of the Sentencing Guidelines de novo and its fact findings for clear error. United States v. Washington, 480 F.3d 309, 312 (5th Cir. 2007).

Here, the district judge did not violate Booker because, as our circuit precedent expressly states, "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range." United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005). The court did not clearly err in finding that the end date of the conspiracy was February 2002. This date is well beyond the effective date of the challenged November 1, 2001 sentencing enhancements for money laundering.

7. Starsky's Sentence

This Court's review of sentencing decisions is limited to determining whether such decisions are "reasonable." Gall v. United States, 128 S. Ct. 586, 594 (2007). In determining whether a sentence is reasonable, we engage in a bifurcated analysis. United States v. Armstrong, 550 F.3d 382, 404 (5th Cir. 2008). First, we examine whether the district court committed any significant procedural error, including: "(1) failing to calculate (or improperly calculating) the applicable Guidelines range; (2) treating the Guidelines as mandatory; (3)

21

failing to consider the 18 U.S.C. § 3553(a) factors; (4) determining a sentence based on clearly erroneous facts; or (5) failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range." Id. We review the district court's interpretation or application of the Guidelines de novo, and its factual findings for clear error. Id. "'There is no clear error if the district court's finding is plausible in light of the record as a whole.'" Id. (quoting United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008)).

Starsky argues procedural error on two grounds: (1) that the district court improperly calculated his sentence because the district court relied on facts not found by a jury beyond a reasonable doubt, and (2) that the district court did not openly consider the § 3553(a) factors. The first point is foreclosed by circuit precedent. See Mares, 402 F.3d at 519. Because Starsky was sentenced post-Booker under an advisory guidelines scheme, the judge was entitled to find sentencing factors by a preponderance of the evidence. United States v. Stevens, 487 F.3d 232, 246 (5th Cir.), cert. denied, 128 S. Ct. 336 (2007). As for the second point, this Court has expressed its belief that "'Congress never intended . . . for sentencing to become a hyper-technical exercise devoid of common sense.'" United States v. Gonzalez, 250 F.3d 923, 925 (5th Cir. 2001) (quoting United States v. Izaguirre-Losoya, 219 F.3d 437, 440 (5th Cir. 2000)). "'Implicit consideration of the § 3553[(a)] factors is sufficient.'" Id. (quoting United States v. Teran, 98 F.3d 831, 836 (5th Cir. 1996)). The district court expressly stated at Starsky's sentencing, "I have considered the advisory guidelines computation and the sentencing factors under 18 U.S.C. § 3553(a) one through seven." The district court sufficiently considered the § 3553(a) factors.

Because the district court's sentencing decision was procedurally sound, we move to the second step of the analysis, namely whether the sentence was substantively reasonable. Armstrong, 550 F.3d at 404. A sentence within a properly-calculated Guidelines range is presumed reasonable. United States v.

Alonzo, 435 F.3d 551, 554 (5th Cir. 2006). A defendant's dissatisfaction with the result of the district court's reasoned analysis of the § 3553(a) factors is insufficient to overcome the presumption of reasonableness. See Gall, 128 S. Ct. at 597. Starsky has only advanced arguments pertaining to procedural error, and as such has failed to rebut the presumption of reasonableness that accompanies a within-Guidelines sentence.

## B. DELORES REDD

### 1. Admissibility of Clarence Honer's Testimony

At trial, Delores's counsel objected to the following testimony by Clarence Honer: "Q. And did [Starsky] tell you anything about 711 Barwood? A. Yes. He told me he had put $10,000 down on that house when he purchased it." Delores argues that to be admissible, Starsky's statement had to be the statement of a coconspirator during the course and in furtherance of the conspiracy under Federal Rule of Evidence 801(d)(2)(E); the statement could not be admitted as an admission by a party opponent under Federal Rule of Evidence 801(d)(2)(A). Delores further argues that the admission of such testimony violated Bruton v. United States, 391 U.S. 123 (1968),[12] and deprived her of the Sixth Amendment right to confrontation.

Because Delores's counsel properly objected at trial, we review the district court's admission of Honer's testimony under the deferential abuse-of-discretion standard. United States v. Garcia, 530 F.3d 348, 351 (5th Cir. 2008). "'A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.'" Id. (quoting Yanez Sosa, 513 F.3d at 200). We heighten our review of evidentiary rulings in criminal

---

[12] This case provides that in the specific context of a joint trial, "[a] defendant's Sixth Amendment right to confrontation is violated when (1) several co-defendants are tried jointly, (2) one defendant's extrajudicial statement is used to implicate another defendant in the crime, and (3) the confessor does not take the stand and is thus not subject to cross-examination." United States v. Restrepo, 994 F.2d 173, 186 (5th Cir. 1993) (citing Bruton, 391 U.S. at 127).

trials. Id. An abuse of discretion in admitting or excluding evidence is subject to harmless error review. Yanez Sosa, 513 F.3d at 201. Likewise, we review Bruton issues for abuse of discretion. United States v. Walker, 148 F.3d 518, 522 (5th Cir. 1998), abrogated on other grounds by Texas v. Cobb, 532 U.S. 162 (2001).

Federal Rule of Evidence 801 states in relevant part that a statement is not hearsay and is thus admissible if "[t]he statement is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity." FED. R. EVID. 801(d)(2)(A). In the present case, Honer's testimony was only admissible against Starsky under Federal Rule of Evidence 801(d)(2)(A), since an admission, by definition, is a statement offered against a party that is "the party's own statement." See United States v. Mann, 161 F.3d 840, 861 n.55 (5th Cir. 1998); see also United States v. Simmons, 374 F.3d 313, 321 (5th Cir. 2004) (noting that in the context of a joint trial for conspiracy, a defendant's admissions were admissible against him under Federal Rule of Evidence 801(d)(2)(A)).

Notwithstanding the testimony's admissibility as an admission, the testimony still must pass muster under Bruton, if it applies. See Walker, 148 F.3d at 522. Bruton does not apply unless a defendant's statement directly incriminates his or her codefendants without reference to other, admissible evidence. Id. at 523 n.4 (quoting United States v. Beaumont, 972 F.2d 91, 95 (5th Cir. 1992), abrogated on other grounds by Ratzlaf v. United States, 510 U.S. 135 (1994)). Honer's testimony concerning Starsky's statement does not directly incriminate, identify, or implicate Delores. Accordingly, Bruton does not apply and the district court did not abuse its discretion by admitting Honer's testimony.

2. Admissibility of "Business Documents" Seized at 711 Barwood

Delores challenges the admissibility of "business documents" seized from 711 Barwood, including various invoices, receipts, and bills. As each document was offered at trial, Delores objected to hearsay and relevance. She contends on appeal that such documents were not business records and therefore not within the business records hearsay exception under Federal Rule of Evidence 803(6). We review the district court's ruling under the same heightened abuse of discretion standard discussed in section III.B.1 of this opinion.

Statements not offered for the truth of the matter asserted are not hearsay and may be properly admitted into evidence. United States v. Gonzales, 606 F.2d 70, 77 (5th Cir. 1979). None of the receipts, statements, or bills were offered into evidence in an effort to demonstrate that their content was truthful. Rather, these documents were offered into evidence to show where they were found and that Delores was aware of the conspiracy to launder money. Because these documents are not hearsay, the district court did not abuse its discretion in overruling Delores's hearsay objection.

3. Admissibility of Handwritten Documents Seized at 711 Barwood

The district court admitted into evidence two telephone/address books with handwritten entries, and sheets of paper with handwritten names and phone numbers of alleged drug dealers working for Starsky, all of which were seized by the FBI during a search of 711 Barwood. Delores argues that these documents did not satisfy Federal Rule of Evidence 803(6), the business records exception to the hearsay rule, and that they were not properly authenticated under Federal Rule of Evidence 901(a). We apply the same heightened abuse of discretion standard of review described in Section III.B.1 of this opinion.

For the same reasons stated in the preceding section, the handwritten documents were likewise not offered for the truth of the matter asserted, and therefore did not constitute hearsay.

With respect to authentication, the Government did not contend that this book was Delores's book, rather a Government witness testified that it was found at her house. FBI Agent Beverly Williams testified that the address book contained the names and phone numbers of individuals from Texas and Mississippi who were purported to be Starsky's drug associates. Honer had testified earlier in the trial that these same individuals were indeed Starsky's drug associates. Agent Porter's testimony linked the telephone number for Roderick Lavallies[13] in the address book to calls made from Delores's home. Thus, assuming, without deciding, that the book was not authenticated as Starsky's book, any error in introducing it against Delores was harmless. See United States v. Rodriguez, 43 F.3d 117, 123 (5th Cir. 1995).

### 4. Sufficiency of the Evidence

Delores contends that there was no proof (1) that the transaction involving the 1974 Oldsmobile affected interstate commerce, or (2) that Delores participated in, much less knew about, the purchase of the vehicle. Delores emphasizes that no witness testified as to whether the signature on the Oldsmobile's title was in fact her signature, and she argues that because the bankruptcy petitions in evidence containing her signature were not authenticated, they could not serve as a basis for comparison.

As stated in section III.A.5 of this opinion, our review is highly deferential to the verdict and we must view the evidence in the light most favorable to the prosecution. Given these constraints, there was sufficient evidence to support Delores's conviction. The Government merely had to provide proof of a slight link to interstate commerce. 18 U.S.C. § 1956; Westbrook, 119 F.3d at 1191. The evidence indicates that Starsky used the Oldsmobile to continue his drug trafficking activities, and "narcotics trafficking, as a class of activities, affects

---

[13] Starsky's Houston home was titled in Lavallies's name.

interstate commerce." Westbrook, 119 F.3d at 1192. Although Starsky used the car as his own, the car's title was in Delores's name and both Delores's name and address were on the certificate of title. Delores's challenge to the sufficiency of the evidence fails.

C. CHARLES WELLS

1. Billy Joe Smith's Testimony

Wells argues that the district court violated Federal Rule of Evidence 404(b) by admitting Smith's testimony that he sold cocaine to Wells in 2002 or 2003. Wells contends that this evidence was both highly prejudicial and irrelevant, and therefore its admission violated his Sixth Amendment right to a fair trial.

A district court's decision to admit evidence of an extrinsic offense under Federal Rule of Evidence 404(b) will not be disturbed on appeal absent a clear showing of an abuse of discretion. United States v. Bruno, 809 F.2d 1097, 1106 (5th Cir. 1987). An abuse of discretion in admitting or excluding evidence is subject to harmless error review. Yanez Sosa, 513 F.3d at 201.

Even assuming then that the district court erred in admitting this testimony, we may not disturb the district court's ruling where it would not have influenced the jury's verdict in such a way as to affect the outcome of the case. See Rodriguez, 43 F.3d at 123. Other evidence adduced at trial – such as Honer's testimony that he and Starsky sold Wells a one-half kilo of cocaine, and Wells's admission that he received a fee to assume the title of (but never possess) Starsky's 1997 Mercedes – was sufficient to support Wells's conviction. Thus, Wells's challenge to the admission of Smith's testimony is unavailing.

2. Sufficiency of the Evidence

Wells challenges the sufficiency of the evidence supporting his money laundering conviction in connection with the 1997 Mercedes. Again, as discussed in Section III.A.5 of this opinion, we apply a very narrow and highly

deferential standard of review, viewing the evidence in the light most favorable to the prosecution. Here, there was sufficient evidence to support Wells's conviction. A reasonable jury could infer that Wells knew the money came from unlawful drug proceeds and that the transaction was designed to conceal the source, the ownership, or the control of the money used to buy the Mercedes.

## D. SIMON TAYLOR

### 1. Bruton Issue

Taylor argues that the district court violated his Sixth Amendment right to confrontation by admitting hearsay testimony solicited by the Government from Clarence Honer and Agent Williams over timely objections. Honer testified to extrajudicial statements made by Starsky labeling Taylor as "the Bank," and Agent Williams testified that Starsky's address book containing names of his drug associates also included Taylor's name. Taylor contends that by failing to sever his trial from those of his codefendants, the district court admitted evidence that was highly prejudicial to Taylor and unrelated to the charges against him.

As noted previously, we review Bruton issues under an abuse of discretion standard. Restrepo, 994 F.2d at 186. Likewise, this court reviews a district court's denial of a motion to sever for abuse of discretion. United States v. Nguyen, 493 F.3d 613, 625 (5th Cir. 2007). Generally, Federal Rule of Criminal Procedure 12(b)(3)(D) requires that a Rule 14 motion to sever defendants be made before trial. Taylor did not move for severance before the trial began. However, at trial, Taylor moved for severance on the basis of Bruton. Where there is a Bruton violation and a party moves for severance during trial, severance of the trials is proper. See Restrepo, 994 F.2d at 186. Bruton does not apply to (1) statements that do not directly incriminate other coconspirators; or (2) statements falling within certain hearsay exceptions, including coconspirator

statements made during and in furtherance of the conspiracy. Walker, 148 F.3d at 522.

Honer testified to Starsky's extrajudicial statements referring to Taylor as "the Bank." This Court has held that statements made by one conspirator to a fellow conspirator identifying yet another conspirator as the ultimate purchaser are statements intended to further a conspiracy. See United States v. Patton, 594 F.2d 444, 447 (5th Cir. 1979). This is the exact situation presented here. Thus, Honer's testimony falls within the first exception to Bruton and the district court did not abuse its discretion.

Agent Williams testified that Starsky's address book contained Taylor's name, names of Starsky's drug associates, and names of people who were not drug dealers. Agent Williams's testimony did not directly incriminate Taylor and therefore falls within the first exception to Bruton. See Walker, 148 F.3d at 522. The district court did not abuse its discretion.

2. Admissibility of Address Book

In a related point, Taylor argues under Federal Rule of Evidence 403 that the district court improperly admitted Starsky's address book into evidence against Taylor. Taylor contends that while the address book was "arguably relevant" to the other Defendants' charges, the jury was unable to compartmentalize the evidence of direct drug activity as applicable to his codefendants but not to him. Taylor concludes that the admission of the address book led to a guilty verdict against him based solely on guilt by association.

The district court concluded that the danger of unfair prejudice did not substantially outweigh the probative value of the address book, and we find that this conclusion was not an abuse of discretion, particularly in light of the fact that the Government neither implied nor explicitly stated that the presence of Taylor's name meant he was involved in Starsky's drug trafficking. Accordingly, the district court did not err by admitting into evidence Starsky's address book.

## IV. CONCLUSION

For the aforementioned reasons, we AFFIRM.